## THE WHITMAN GOLD & SILVER MINING CO., Appellant, v. F. M. BAKER and others, Respondents.

A corporation formed in California may hold land in this State.

Our Courts would, in a proper case, probably hold that a corporation formed in another State could hold no more land in this State than is allowed to be held by corporations under our own law, to wit: what was necessary to conduct the business for which it was incorporated, and no more.

When a corporation formed in another State is limited by its charter as to the number of acres of land it may purchase for the purposes of conducting its business, will our Courts hold that such corporation is incapable of holding a greater number of acres in this State—*Quære?*

It would seem the Legislature might grant to foreign corporations the right to acquire in this State any quantity of land, although limited by its charter to the purchase of a smaller quantity.

Corporations created by Legislative enactment have only such powers as are specifically granted, or are necessarily incident to those granted.

There is a difference between exercising powers entirely foreign to the nature of a corporation, and exercising legitimate powers to an improper extent.   In the former case the acts done might be absolutely void; in the latter they would only be voidable by a proper proceeding on the part of the State.

If a corporation holds more land than it is legitimately entitled to hold, still individuals will not be protected in trespassing on any portion of such land.

The law of 1861, in regard to surveys of public land, has been repealed.   The tenth and thirteenth sections of that Act are unconditionally repealed, without any qualification.

When a second action for damages is brought, including the damages in a former action, and also damages accrued after the bringing of the former action, the first suit cannot be pleaded in abatement of the last. A plea of abatement must go to the entire cause of action.

The ruling of a Court in regard to a mere interlocutory order cannot be held as *res adjudicata.*

APPEAL from the District Court of the Third Judicial District, Lyon County, Hon. WM. HAYDON, presiding.

The facts are stated in the opinion of the Court.

*Ellis & Sawyer,* for Appellant, made the following points:

The law of this State, and not the law of California, must govern as to limitations upon appellant's capacity to hold land. (Story on Conflict of Laws, Secs. 424, 428, 430, 431, 434, 463; Ang. & Ames on Corp., Secs. 162–163; *Lathrop* v. *Bank of Scioto,* 8 Dana, 121; *Runyan* v. *Coster's Lessees,* 14 Pet. 122; *Silver Lake Bank* v. *North,* 4 Johns. Ch. 370; 2 Kent's Com. 284–285.)

The law of this State does not limit corporations in their capacity to hold land. (2 Bla. Com. 75, 76; *Lathrop* v. *Bank of Scioto,* 8 Dana, 120; 1 Bla. Com. 475; Ang. & Ames on Corp., Sec. 145; 2 Kent's Com. 277; Stats. 1861, Chap. 1; Statutes touching Corporations.)

If appellant has exceeded its capacity to hold land—as the same exists either by the laws of this State or of California — it cannot be inquired into in this action. (Ang. & Ames on Corp., Secs. 152, 161; *Leazure* v. *Hillegas,* 7 S. R. 320; *Baird* v. *Bank of Washington,* 11 S. R. 418; *Runyan* v. *Coster's Lessees,* 14 Pet. 122; *People* v. *Mauran,* 5 Denio, 389; *Silver Lake Bank* v. *North,* 4 John. Ch. 373; *Natoma W. & M. Co.* v. *Clarken,* 14 Cal. 552; *Lathrop* v. *Bank of Scioto,* 8 Dana, 129; 14 Curtis, 3, 85.)

If appellant had a right to hold the land, the title by which it held it is good under the law of this State. (*Coryell* v. *Cain,* 16 Cal. 573; *Sankey* v. *Noyes,* 1 Nev. 71–72; *McFarland* v. *Culbertson,* 2 Nev. 280.)

The acts of trespass being committed by defendants, (respond-

ents) were such as the Courts now will relieve against by injunction. (*Natoma W. & M. Co.* v. *Clarken*, 14 Cal. 551; *Halleck* v. *Mixer*, 16 Cal. 578; *Hecks* v. *Mitchell*, 15 Ib. 108.)

The former action cannot be pleaded in abatement of this, for the reasons, among others, that the former action does not embrace the entire period of time and entire cause of action stated in the latter.

*C. E. DeLong*, for Respondents.

The respondents' brief is in reply to the points made by the appellant. It is an extended argument and not capable of being so abridged as to come within the space usually allowed to coun sels' brief in these reports.

Opinion by BEATTY, C. J., LEWIS, J., concurring.

The appellant in this case is an incorporation formed under the general incorporation laws of California for mining purposes. Some time before the institution of this suit the appellant had inclosed and by its agents occupied a piece of the public timbered land containing some sixteen or seventeen hundred acres. The respondents, or some of them at least, (the others probably being their employees) in the month of August last caused two surveys to be made (under a former law of this State in regard to surveying and holding public lands) within this inclosure, claiming some thirteen or fourteen hundred acres of this enclosed land. About the time of the surveys they also entered upon the land now claimed under the surveys and commenced cutting the wood off. The appellant then commenced suit against John Williams, John Doe and Richard Roe for trespass, and praying for an injunction to restrain the trespassers during the litigation. The summons was served on John Williams and some ten other persons, all of whom answered the complaint.

At some subsequent stage of the proceedings this case was dismissed as to all the defendants except John Williams. As to him it is still pending. The Court refused to grant a temporary injunction pending the suit, and from this order no appeal was taken. The cutting of the wood from the premises in dispute continued,

and the appellant's counsel being it seems somewhat doubtful whether it could lawfully hold more than 1,440 acres, or at least being willing to conform to what they supposed to be the views of the District Court on this subject, had a survey made of their land following the fence which inclosed their possessions for a greater part of the way, but running across the inclosure at some part of it so as to include in their survey something less than 1,440 acres.   The appellant then on the fourteenth day of September brought a new action against John Williams and all the other persons who had filed an answer in the first suit, and also John Doe and Richard Roe, for trespasses committed within this last survey.   John Williams and all the other defendants except John Doe and Richard Roe put in a joint answer.   The answer sets up substantially the following defenses :

*First.*—It denies the plaintiff ever was the owner of or in possession of the land upon which the trespass is alleged to have been committed.

*Second.*—It alleges the plaintiff is a corporation created in California for mining purposes ; that by the laws of the State giving it an existence it can only acquire, hold or possess such real estate as is necessary to carry on its legitimate business, and in no event can hold more than 1,440 acres ; that no part of the land in controversy was necessary for the corporation to carry on its legitimate business of mining.

*Third.*—The facts and circumstances attending the bringing and prosecution of the former action as we have heretofore stated them.

The appellants in their second (present) action also pray for an injunction restraining waste during the pendency of this suit, and state facts sufficient to entitle them to that remedy if they can maintain their action for trespass.   The District Judge granted a restraining order and the defendants were cited to appear and show cause why a temporary injunction should not be granted.   Upon the hearing of this application the Judge below refused to grant the injunction, and the plaintiff appeals from that order, as he may do under the provisions of our Practice Act.   On the hearing it was clearly shown that appellant for some time past had by its agents

been in possession of certain buildings within an inclosure of some sixteen hundred and odd acres, and through its agents was claiming and asserting a title to the whole of the inclosed land.    There was no dispute about the entry of the defendants.    The only contested points were :    Could this corporation lawfully hold 1,600 acres of land, or having unlawfully attempted to hold 1,600, could it abandon its claim to 200 after the defendant's entry and still successfully assert its right of possession to the remaining 1,400 ?    Second : Was not the plaintiff barred from proceeding in this case by the proceedings had in the suit brought in August ?

It seems to be conceded by both sides that a corporation formed in California for mining purposes may hold land in this State.    This we believe is a doctrine too well established to be discussed here. But, say respondents, such corporation must in no case hold more land than the nature of its business and its absolute necessities require ; nor in any case more than 1,440 acres.

Let us examine these qualifications of the general rule.    Our statute in regard to corporations limits their holding of land to such quantity as may be necessary for the purposes of the corporation. The California Act of 1858, under which we presume this corporation was formed, contains the same limitations, and also the further limitation that no such corporation shall in any case hold more than 1,440 acres.

Although our Act only refers in terms to those corporations created under the general incorporation law of this State, still the spirit of the Act would seem to extend to all corporations ; and probably the Courts of this State would in a proper case hold that no corporation could legally acquire or hold more land than was necessary for the business and purposes of the corporation.    Whether that limitation as to 1,440 acres which the California Legislature has chosen to impose on all corporations in that State, would have any weight or effect on the decisions of Courts in this State, is far more questionable.

If we permit a foreign corporation to conduct mining operations and acquire real estate within our limits, it appears to us our Legislature is the proper power to limit that corporation in the extent of its acquisitions, and not the Legislature in another State which

grants the charter. If the Legislature of another State were to create a corporation to conduct mining operations in this State and authorize it to buy and hold a million acres of land, our Legislature might prohibit their buying more than one acre. On the other hand, if they were by their charter allowed to hold only one acre of land, our Legislature might (by a general law, for it can pass no special law in regard to corporations) extend the right to buy a million acres. If under such a law the corporation purchased more than its original charter allowed, it might be amenable to some proceedings on the part of the State or Government granting the charter, but it would not whilst it remained a corporation lose its land under our laws.

Whatever might be the determination, in a proper case, of this question as to the quantity of land which a California mining incorporation may hold in this State, we do not think it arises in this case. It is a well settled rule that corporations created by legislative enactment have only such powers as are specifically granted or are necessarily incident to those granted; and if they attempt to exercise powers foreign to those granted their acts have frequently been held void. But there is a difference between exercising powers entirely foreign to the nature and object of a corporation, and exercising legitimate powers to an improper extent. A mining corporation, for instance, as such, has no right to enter into an insurance business, and probably a policy of insurance issued by such a corporation would be held void on its face, and the party insured would perhaps be entitled to recover back the premium paid. But a corporation for mining purposes must almost of necessity have some real estate. Probably no such corporation exists on the Pacific Coast without owning or claiming some land. A deed, then, to a mining corporation, is not void on its face. If they have violated the law in taking a greater quantity of land than is allowable, then they have committed a wrong, not against any particular individual, but against the whole community, and this wrong can only be inquired into by a proceeding on the part of the State. Their deed to the land, if they buy it from one having title, or their possession if they only derive title from occupation, gives them a right to hold against all the world except the State.

It seems to be admitted by respondent, that if this mining company required that much for the convenience of conducting its business, it might hold to the extent of 1,440 acres, but no more. Now suppose the corporation did actually require at least 1,440 acres of land; that for the purpose of prosecuting its legitimate business it entered upon a piece of public unoccupied domain, intending to occupy just such quantity as the law allowed, say 1,440 acres, but in making its inclosure it took in ten acres or one acre over 1,440 acres; would this forfeit its right to all real estate it held in Nevada? Would it, by taking up 1,450 acres of the public domain forfeit not only the land last taken up, but also the previously acquired mining ground? If there is to be any forfeiture, it appears evident to us that it must be either the whole of the real estate of a corporation which acquires too much land, or it must be only the surplus, over and above the quantity allowed by law. We think to hold that a mining corporation which is legitimately in the possession of a mining claim should forfeit the same, if perchance it should buy an acre of land that it did not need for its legitimate business, would be a harsh and unwarrantable doctrine, not sanctioned by any law or decision.

If, then, a corporation does not lose all its rights, so far as real estate is concerned, by acquiring an excess of land, no individual can be protected in trespassing on any part of the realty held by such a corporation. For if such corporation held two hundred acres when it was entitled to hold only one hundred, and A is protected in trespassing on one hundred of the two hundred, B would be equally entitled to protection in trespassing on the other hundred; so that under pretense of taking from the corporation its surplus lands, several trespassers could take it all. In this case, if defendant had a right to take 1,600 or 1,700 acres of inclosed land, they had an equal right to take the mining ground of appellant, if it has any.

Respondents certainly can derive no advantage or protection from the survey made by them. The law of 1861, under which these surveys were made, is clearly repealed by the eighth section of the Act of March 9th, 1865, in regard to possessory actions.

That portion of Section 8 in the latter Act which uses this lan-

guage, " So far as the same are inconsistent with or repugnant to," refers to " other Acts or parts of Acts." It has no reference to the tenth and thirtieth sections of the Act of 1861. They are repealed absolutely and unconditionally. The conclusion at which we arrive is that respondents were guilty of a naked, unjustifiable trespass.

The only remaining question is, what is the effect of the pendency of the proceedings in the other action in this case? Without stopping to inquire as to the question of identity of parties, we will say, the pendency of the other action cannot be pleaded in abatement of this, because the damages recoverable in the other action would be limited to those which accrued previous to filing the complaint. Here there were damages alleged at a time subsequent to the filing of the former complaint.

These damages may be recovered in the latter action, notwithstanding the pendency of the former. A plea in abatement must go to the entire cause of action or it is not available.

Here the plea or answer only reaches to a part of the cause of action.

If the former action has been tried on its merits, or is still pending when this latter action is brought to trial, the appellant, in its proof, may be confined to what was done after the filing of the first complaint.

The ruling of a Court in regard to a mere interlocutory order or decree, cannot be held to be *res judicata.* Although the District Court refused to grant a temporary injunction pending the first action, it is not certain that the same Court may not on the final hearing grant a perpetual injunction. It is only final judgments or decrees that can be pleaded as *res judicata.*

The order of the Court below refusing to grant a temporary injunction is reversed. That Court will make an order granting a temporary injunction, pending the trial of the cause, upon the appellant's giving a bond or undertaking to pay all damages arising from such injunction, if it be finally determined that it was not entitled to the same. The appellant will also have judgment for its costs in this Court.