# Morgan & Raynor, Trustees, v. Donovan.

*Real Action in the Nature of Ejectment.*

1. *Common title; source of; who can not deny.*—Where plaintiff and defendant claim under a common source of title—the one by conveyance at execution sale of the property of a corporation, and the other under deeds of trust executed by it—neither can deny the source of their common title; and the plaintiff can not assert the want of power in the corporation to acquire the property, and to convey it by mortgage; if, however, the property had been acquired by a contract which remained executory, either party in a suit to enforce the contract, might raise the question as to the power of the corporation to acquire such property, and upon showing that the contract was *ultra vires*, could defeat recovery; so, also, the inquiry would be material in a proceeding to vacate the charter for *misuser*, or to set aside the contract, as without the pale of corporate authority.

2. *Charter of railroad company, and mortgages construed.*—The charter of a railroad company empowered it, among other things, to construct and operate a railroad between the cities of Mobile and New Orleans, and to acquire and hold such real property "as may be necessary and convenient, for the construction, maintenance and management of the railroad," and also to acquire "any steamboats, piers, *wharves* and the appurtenances thereunto belonging, that the directors may deem necessary, profitable and convenient for the corporation to own, use and manage, in connection with said railroad."

In deeds of trust, executed by the railroad corporation, the words of conveyance were qualified by clauses like the following: "The lands occupied by said railroad, or hereafter acquired, owned and occupied . . including all depots, &c., now owned and occupied, or hereafter acquired in connection with said portion of said railroad, situate upon or lying within the limits of said cities, or upon or adjacent to said portion of said railroad, and the route

[Morgan & Raynor, Trustees, v. Donovan.]

and line thereof," In another mortgage or deed of trust, the conveyance was qualified as follows: "All depots, station-houses, wharves and warehouses . . now owned and occupied, or hereafter to be acquired, and used in connection with its said railroad, together with all steamboats, and personal property used, or hereafter to be used, exclusively for the constructing, maintaining, operating or conducting the business of its said railroad." *Held*,

1. The charter authorizes the corporation to acquire and hold property to be used in the construction, maintenance and operation of the road, or in connection therewith; but not the acquisition of property not needed or used, for one of these purposes, or in connection with such purposes.

2. The mortgages conveyed only such property, real or personal, as was useful and necessary and employed in the construction, maintenance, operation, repair and preservation of said railroad: and property acquired and owned, and not used or to be used in connection with the railroad, and in promotion of the direct and proximate purposes of its construction, did not pass.

3. Property bought of an opposition steamship line, not with a view of employing it in connection with the business of the road, but to withdraw it from business, thereby preventing competition, was not authorized to be acquired by the charter, and not covered by the granting clauses in the mortgages.

APPEAL from Circuit Court of Mobile.
Tried before Hon. H. T. TOULMIN.

The appellee, Isaac Donovan, on the 9th day of October, 1873, brought a real action in the nature of ejectment against John A. Jacques, to recover certain wharf lots in the city of Mobile. The case was continued for several terms, and tried in June, 1876. Jacques had surrendered possession after suit was brought, and the appellants, E. D. Morgan and James A. Raynor, trustees under a deed of trust made by the New Orleans, Mobile and Chattanooga Railroad Company, (then the New Orleans. Mobile and Texas Railroad Company), on the 1st day of January, 1869, and who had been in possession since February, 1875, claiming title, were, by consent, substituted in place of Jacques, who was discharged; and they pleaded not guilty.

In an agreement made between the parties, it is recited that "the trustees entered and hold possession under the orders of the Circuit Court of the United States, in a suit therein pending in the city of New Orleans for the District of Louisiana, which, by its terms, put and confirmed them in possession as trustees and receivers of the property conveyed and described in said deed of trust; but it is agreed that this suit is to proceed against said Morgan and Raynor as if the Circuit Court had assented to the same, and leave had been given to plaintiff to sue the said Morgan and Raynor."

The property in controversy was conveyed to the New Orleans, Mobile and Texas Railroad Company, by one Charles Morgan, on the 12th day of December, 1871, which conveyance was duly recorded. It consists of four wharves or wharf lots, on Mobile river, fronting on Front street on the

west, and Government street dock and wharf on the south. Plaintiff deduced title as follows:

Donovan obtained judgment against the railroad company on the 28th day of February, 1873, execution received by sheriff March 17th, and levied March 18th, 1873, on the property in controversy. Two other persons had also recovered judgments against the company. Execution on the first of these came into the sheriff's hands February 19th, 1873, and was levied on the same property March 13th, 1873; on the second, execution was received February 11th, 1873, and levied on the same property, on the same day. On the 14th day of June, 1873, he sold and conveyed the premises to Donovan, plaintiff in this suit, who, before bringing it, demanded possession.

The evidence shows that the New Orleans, Mobile and Texas Railroad Company took possession early in the year 1872, employing Jacques as wharfinger, "to keep the property in repair, to contract with steam-boats and vessels for the use of the property, in receiving and discharging cargoes, and to collect wharfage from merchants and others who might desire to receive or ship freight over the same." The property was "not adjacent or contiguous to any other railroad property, but was separated therefrom by blocks of stores belonging to private owners, public streets, and by Government street wharf, and also partly by an empty or vacant dock." A map, showing the *locus in quo*, and the situation of the railroad depot, was introduced in evidence; but it has been impossible to procure a lithograph of it, so that it might be here incorporated. The testimony also showed, that the property had "never been used as appurtenant to or in connection with said railroad, or in receiving or shipping freight from or to said railroad, or for railroad purposes." There was testimony that on one occasion a temporary track was built that a car might get on the wharf, and a car was so put on the wharf. It seems, however, that this was not a *bona fide* use, having occurred after levy of the executions under which the sale and deed were made to plaintiff in this suit. The cars could be moved on this track "only by use of crow-bars and tackle, having to be constantly shifted, to get them around the street corners." This car and track were soon removed, the track being an insecure and temporary affair.

It was shown that the wharves were acquired by the railroad company, under a contract with Morgan, which was intended "to adjust various matters in controversy, and to establish harmonious relations between them. Morgan had been running a line of steamers between Mobile and New Orleans. Under this contract the line was withdrawn

shortly afterwards, and after the boats were taken off, the company took possession." The road was completed between Mobile and New Orleans about a year before the contract was made ; and both the contract and deed bear date December 12th, 1871.

Jacques remained in possession of the property until November, 1873. The New Orleans, Mobile and Chattanooga Railroad Company, which was authorized by its charter to construct and operate a road between Mobile and New Orleans, had, in the meantime, changed its name to that of the New Orleans, Mobile and Texas Railroad Company, and having defaulted in the payment of interest on the 22d day of March, 1873, surrendered its property to Gardner & Butler, trustees of the second mortgage, who had the same foreclosed in the United States Court for the District of Louisiana. A sale was made in June, 1873, which was confirmed by that court, and a deed made to the trustees on June 14th, 1873, who purchased in behalf of the bondholders, secured by this second mortgage, who organized a corporation under the old name of the New Orleans, Mobile and Texas Railroad Company. In February, 1875, default having been made in the payment of interest, secured by the first deed of trust, possession of its property was delivered to Morgan and Raynor, trustees in said deed, (Raynor having been appointed in place of Oakes Ames, deceased,) and they filed a bill for foreclosure, and for their appointment as receivers in the meantime. The United States Court for the District of Louisiana, in which the bill was pending, appointed them receivers accordingly, confirming them in their possession of the property conveyed by the mortgages, &c.

The first mortgage spoken of, was executed January 1st, 1869, and the second mortgage on the 8th day of April, following, and both were duly recorded. A very full statement of the provisions of these mortgages, as also of the charter of the company, is given in the opinion, and need not be here repeated.

This was substantially all the evidence, and the court, at the request of the defendants, charged the jury in writing, after stating the claim of title of the parties, as follows:

"From this concise statement of the case it will be seen that the controversy arises between the titles of the parties. The whole question is, therefore, did the title pass under the trust deeds to the defendant? Do the deeds cover the property? If so, the plaintiff has no title and cannot recover here. The land and wharves in question were not owned by the railroad company at the time the mortgages were execu-

ted and are not named or described therein, but were subsequently acquired. If they were used and managed in connection with the railroad; if they were essential to its use and enjoyment; if they were held by the company for legitimate railway purposes, then they did pass by the deeds, and plaintiff cannot recover. Now, the company was authorized to acquire lands and wharves, and mortgage them; as to this there is no dispute, but that the company mortgaged the lands and wharves in question is disputed. The particular lands which were to be acquired, after the trust deeds were executed, must necessarily be lands that the company was authorized to acquire for legitimate purposes, for its legitimate use, and that were reasonably in contemplation of the parties at the time the trust deeds were executed.

"If the land in question, when acquired, was appropriated to corporate objects and uses, and is necessary for the enjoyment and exercise of any franchise of the company, although acquired after the execution of the deeds, it passed by the trust deed; but if not dedicated to corporate purposes, if not necessary for the enjoyment and exercise of any franchise of the company, it did not pass, and was liable to the legal claims of other creditors, and this plaintiff must recover ; and it is referred to you, gentlemen, to ascertain this question of fact, under the legal rules above stated. I charge you, then, in substance :

"If you believe from the evidence that the property described in the complaint is the same property that is described in the four deeds from Rufus Dane, sheriff of Mobile county, to the plaintiff, and that the said lands and wharves are the same which were conveyed by Charles Morgan and wife to the New Orleans, Mobile and Texas Railroad Company, and that the said lands and wharves were purchased by said railroad company after the completion of said railroad between Mobile and New Orleans as the same is now constructed, and that the said property is not connected with the said railroad nor contiguous nor adjacent thereto, and is not necessary, nor is, nor has been used for railroad purposes by said railroad company, but is entirely disconnected from said railroad and all of its other property, then you must find for the plaintiff."

"To which instructions, so given by the court, in writing, as requested by defendants, they, the said defendants, excepted."

Thereupon the defendants requested the court, in writing, to give the following charges :

"1. If the jury find that the property lies within the city of Mobile, and was owned by the New Orleans, Mobile and

Texas Railroad Company, under a conveyance from Charles Morgan, and that there has been a default in payment of interest, as set forth in the records in the cases of Gardner and Butler, and Morgan and Raynor, the defendants have the best right, and plaintiff can not recover.

"2. If the property described lies within the city of Mobile, and is wharf property, purchased by the New Orleans, Mobile and Texas Railroad Company, and near its line of railroad, subsequently to the mortgage, it is included in the terms of the mortgage; and if defendants are in possession under their deed, and orders of the United States Court at New Orleans, they are rightfully in possession, and plaintiff can not recover.

"4. If the property lies in the city of Mobile, and is situated in connection with the railroad depot and railroad, as shown in the map and evidence of location; and was acquired of Charles Morgan, as by his deed, and was possessed by the company until surrendered to Gardner and Butler, and it was held under that deed till the entry of Raynor and Morgan, then the wharves are included in the mortgages, and the verdict should be for Raynor and Morgan; and that, under the decrees, sales and other proceedings in the Circuit Court of the United States, the defendants are entitled to possession and a verdict."

The court refused these instructions, and the defendant excepted.

The plaintiff then requested the following charges, in writing, which the court gave, and the defendants excepted:

"A. If the jury believe that the property described in the sheriff's deeds to Donovan is the same described in the complaint, and that the property described is not connected with or adjacent to said railroad and is not used for railroad purposes, and is not necessary for the convenient use and operation of said railroad, they must find for the plaintiff; and the burden of proof is on the defendants to show that said after acquired property was purchased and used for necessary or legitimate railroad purposes in connection with the said road.

"B. That it makes no difference to what use the defendants do or have put said property, described in the complaint, if the said wharves are not adjacent to or connected with the said railroad and was not purchased to be used, and was not in fact used, *for* legitimate railroad purposes by the railroad company itself in the operation and management of the railroad, they must find for the plaintiff.

"C. If the jury believe that the wharves in controversy were purchased from Charles Morgan by the railroad com-

[Morgan & Raynor, Trustees, v. Donovan.]

pany for the purpose of buying off his opposition line of steamboats between Mobile and New Orleans, and that the said property is not adjacent to or connected with the other property of the railroad of said company, and was not used or necessary for railroad purposes or in connection with the operation of said railroad, they must find for the plaintiff.

"D.   That no property was conveyed by the proceedings in the United States Circuit Court *to* the defendants, except such as was conveyed in the mortgage, and no property is conveyed in the mortgage to defendants except such as was acquired and used for railroad purposes by the said company."

The charge of the court, the refusal to charge as requested, and the giving of the charges requested by the plaintiff, are now assigned as error.

·GEORGE N. STEWART, and JOHN A. CAMPBELL, for appellants.—This was a statutory real action to recover possession, and in such action only a plaintiff who *has had possession* can recover, against one who entered and unlawfully withholds. The statute is a special provision, unknown to the common law, and applies only to special cases of trespass. The plaintiff elected to pursue this remedy when ejectment was open to him, and he must prove his case, as he laid it.—*Glover v. Bush*, 47 Ala. 173. He never had possession. Defendants never entered unlawfully. The court, in its charge, ignored the distinctive features of this action, and treated it as ejectment.

II.   The charter authorizes the railroad company to maintain, manage, use and enjoy any railroad property, steamboats, *wharves*, and appurtenances that the directory may deem necessary, profitable and convenient for the corporation to own, use and manage in connection with the railroad. Express power to purchase was thus given, and having the power to own and purchase, the railroad company had the right to mortgage. For what purpose the property was purchased, or how it was used, was an immaterial inquiry in this suit. The plaintiff is neither the sovereign, to institute an inquiry whether the corporation has purchased property not authorized to be held by it, nor is he a stockholder, complaining of a misapplication of corporate funds in an unauthorized purchase.—*Whitman v. Mining Co.* 3 Nevada, 386; 17 Wisconsin, 372; 22 New York, 258; *Smith v. Sheely*, 12 Wallace, 358; 12 Mass. 102; *Spear v. Crawford*, 14 Wendell, 20. The *validity* of the conveyance is conceded when both parties claim through it.

III.   The language of the conveyances is certainly broad

enough to cover this property. The instrument evinces a purpose to convey every thing. Its language is broader than that in many conveyances, held to pass all after acquired property. In *King v. Marshall*, 33 Beavan, 563, the descriptive words were, "all the lands, tenements and estate of the company." *In re* Marine Insurance Co. Law Rep. 4 Eq. Cases, the words were : "Our undertaking and property, receipts and revenues." In *Wilson v. Boyce*, 2 Otto, 320, the words of the act of the Legislature of Missouri, were "That the bonds should constitute a first lien and mortgage on the road and *property* of the company." The Supreme Court, commenting on the statute, say : "The generality of its language forms no objection to the validity of the mortgage. A deed of all my estate is sufficient. So a deed of all my lands, wherever situated, is good to pass title. A mortgage of all my property, like the one we are considering, is sufficient to transfer title."—4 Co. 427 ; 10 Paige, 140 ; 1 Atk. on Cor. 2. The same doctrine is stated in 2 Lomax Dig. 212. See, also, *Dillon v. Barnard*, 21 Wallace, 430; *Pierce v. Emory*, 32 N. H. 484 ; *Galveston v. Cowdrey*, 11 Wallace, 459.

IV. If Morgan, by running a line of steamboats in opposition, rendered the business of the road not only unprofitable, but ruinous, it certainly became necessary, convenient and profitable to purchase that line or its appurtenances. The motives of the purchase were immaterial, if the company had the right to acquire this property. It was not bound to put cars on it, all at once—it may not have done so, because of inability to carry out plans for increasing depot facilities entertained at the time of the purchase, or, its directory may have changed their views. The proof does not justify a finding that the purchase was made merely to buy off Morgan's line. Even if it were the case that the sole motive for acquiring the wharves from Morgan was to avoid competition, that would not make the purchase void.—46 New Hamp. 284 ; *Capper v. Earl of Lindsay*, 3 House of Lords Cases, 293 ; 14 Eng. L. and Eq. 9 ; 18 L. and Eq. 87 ; 15 Jur. 979; 20 Law J., N. S. (Chan.) 248 ; 1 Eng. Rw. Cases, 462, 58; 9 Sim. 264.

GAYLORD B. CLARK and FRANK B. CLARK, Jr., for appellees.— The law, as well as the written agreement, should confine the controversy to a comparison of the respective titles to the property in question, which the parties had acquired from the New Orleans, Mobile & Texas Railroad Company as a common source.

The defendants (appellants) claim, that the trust deed of January, 1869, conveyed to them in express terms, all prop-

erty, real and personal, which was then owned or which might thereafter be acquired by the Railroad Company, within and between the limits of the cities of New Orleans and Mobile; that the property being within the limits of the city of Mobile, is embraced in, and passes to them by the terms of the deed; and that the judgments, and sheriff's deeds to plaintiffs, being subsequent to the making and recording of the mortgage, are subject thereto. To this we reply for the appellees, that the property is not within the express terms of the mortgage. The thing conveyed is a railroad, constructed and to be constructed; described as lying between the cities of New Orleans and Mobile, and within the limits of said cities, on the route or line of said railroad—the entire thing which the company was authorized to own and possess for the exercise of its franchises. But the grantors, not satisfied with such general description, proceed to a particular enumeration of what constitutes the railroad and its appurtenances. The descriptive portion of the deed is not broad enough to embrace in its terms after acquired property not purchased nor occupied for railroad purposes; property not contiguous, adjacent or appurtenant to the railroad itself, and not essential to the convenient enjoyment of the company's franchises. The dollar bonds, a copy of which is set out in the deed, show how the deed was construed at the time by the parties themselves. The property is there described as follows, viz: "All that portion of the railroad of said company lying (within the States of Louisiana, Mississippi and Alabama) between the city of New Orleans and the city of Mobile, and within the limits of said cities, together with all the real and personal property, equipments and appurtenances of said company, acquired or to be acquired upon or adjacent to said section of said railroad, as in said deed of trust is fully described." Even if the general terms of the deed are broad enough, they must be construed in connection with the particular words, and be referred to property of like character and description.—Sedgwick, Stat. and Const. Law, 423; Potter's Dwarris on Stat. and Const. L. p. 272, N. 3. A sweeping clause is often put in "to guard against accidental omission, but in such cases it is meant to refer to estates or things of the same nature and description with those already mentioned."—Broom's Maxims, 275, 276.

The property particularly *enumerated* is only such as appertains to the construction and operation of the railroad, and the evident object of the conveyance was to borrow money for the completion of an uncompleted railroad, so as to enjoy the franchises granted by the charter, and to give as a security such after completed railroad and its franchises.

II. The property sued for, did not pass under the mortgage, because not in contemplation of the parties at the time of its execution    The intention must be drawn from the deed itself, and the circumstances of its execution, and the legal duty and capacity of the contracting parties.—*Pollard et als. v. Maddox*, 28 Ala. 321.    See, also, *U. States v. Union Pacific Railroad*, 1 Otto R. 72.    The intention of the parties to a deed thus made manifest,.must prevail; and general language will not be allowed to defeat such intention.—Potter's Dwarris on Stat. & Const. Law, pp. 175, 176; Broom's Maxims, 276.

The law considers that every corporation chartered with limited powers, will act within the scope of such powers—will do its duty, and will not disregard the restrictions which, on grounds of public policy, are placed on its operations by the terms of its charter.

The legal presumption, then, is that at the time the railroad company made its deed of trust to the defendants, its intention was to do only that which it was lawfully authorized to do in furtherance of its legitimate objects; and the after acquired property which it then intended to convey, was only such as it had a legal right to acquire.

In holding that the parties to the deed contracted in contemplation of the powers of the company to acquire property, we must determine, by reference to its charter, what those powers were; and we submit that the intention of the legislature, as determined by a proper construction of the entire act, is to limit the power of the corporation in the acquisition of property, to such only as should be obtained for, and which was necessary and convenient for the railroad and its operation.—*Vermont Central R. R. Co. v. Burlington*, 28 Vt. 484.

It will not do to segregate certain general words from the context, and hold that the company possesses all the powers which the isolated expression, without regard to the general intent and purpose of the act, might import.    Such an operation would often lead to absurd conclusions.

Take, as an illustration, section 19 of the charter, which contains language broader and more general than is found in any other portion.    By this section, "if any person wilfully do, or cause to be done, any act or acts whatever, whereby any building, construction, or work of said corporation, or any engine, machine, &c., shall be stopped, obstructed, injured or destroyed, the person so offending shall pay" double damages to the corporation, and may be indicted and punished by imprisonment.    Could it be reasonably contended, that if the company should purchase a saw mill

[Morgan & Raynor, Trustees, v. Donovan.]

in any part of the city, and should operate said mill and peddle lumber therefrom, as an ordinary dealer, and a person should obstruct, injure or destroy the wagons or mill, that such offender could be punished under this act? Yet, failing to observe that the object and purpose of the act, was to protect the public from the inconvenience and danger arising from an injury to the railroad itself, and not to make the property of the corporation any more sacred in the eyes of the law than that of others—the claim of appellants goes to the extent of sustaining such punishments, and because the letter of the law is in terms broad enough to cover the case. *Qui hæret in litera, hæret in cortice.*

The burden of proof was on defendants to show that the property was acquired for the use of the railroad, that it was necessary and convenient therefor, and was, in fact, so used. *Shamokin Val. R. R. Co. v. Livermore,* 47 Pa. St. 465; *Plymouth R. R. v. Caldwell,* 39 Pa. St. 337. Disability to mortgage after acquired property, is the rule; ability, the exception; "and he who alleges the exception must prove it." *Palmer v. Wright,* Supreme Court of Indiana, Feb. term, 1877; cited in 4 Cent. Law Jour. 548. But defendants have shown that the only purpose of the purchase, was to buy off a competing line of steamboats. It could not have been in the contemplation of the parties to the mortgage made in 1869, that after the completion of the road, the company would buy off competition, and that the property which might be accidentally secured thereby would be covered by the mortgage.

Nothing the first or second mortgage trustees did, or purpose doing to the property, can affect the legal rights of the parties. It was the company which held the charter and the powers thereunder to acquire lands; and the title of the plaintiff to the property is affected only by the status of the company in its relations thereto. A delivery of the property by the company to the trustees, would make no difference. *Parish v. Wheeler,* 22 N. Y. 494. In *Myer v. Johnston,* 53 Ala. 237, this court said, "A corporation, being a creation of legislative enactment, has only such powers and capacities as it is endowed with by its charter. Persons who deal with it, are presumed and required to know, what its powers and capacities are; and they contract with it in reference to the extent thereof, and with the understanding that the language of their contract is to be limited and construed accordingly."

III. The trust deed is not valid either in law or in equity to convey the property in controversy.

At common law, a party could not sell nor convey that which he did not, at the time, own or control.—*Otis v. Sill*, 8 Barb. 102; *Seymour v. Canand and N. F. R. R. Co.* 25 Barb. 284, and cases cited by Church, of counsel. Ib. p. 295. See, also, *Coe v. C., P. & I. R. R.* 10 Ohio, St. R. 372; *Pierce v. Emory*, 32 N. H. R. 484; *Morrill v. Noyes*, 56 Maine R. 456, and numerous authorities cited by counsel and courts in above cases. The deed of trust was not a valid conveyance of the wharves, at common law; and there is no general statute abrogating the common law rule in this State. · The defendants, to sustain their title, must find an express authority in the charter of the company, enabling it to make the mortgage in question, and to give it, when made, the effect that is claimed. It may be argued, "that the purpose in borrowing the money was to construct the road; that the money had to be borrowed before the road could be constructed; and that there was necessarily implied a power to mortgage the railroad before it was constructed; and, as the franchise to use the road passed with it, that all property necessary and convenient for the exercise of those franchises should pass also, as appurtenant to the railroad." But, the implication, must go no further than the necessity requires. Money was to be borrowed and property purchased "for the purpose of constructing and maintaining the railroads." And the mortgage on the railroads so constructed or to be constructed, and the property so purchased or to be purchased, with the franchise to enjoy the same, alone was authorized to secure the payment of such loan. *Cessant ratione legis, cessat ipsa lex.*—*Winslow, trustee, v. Woodward*, 18 B. Monroe, 4431 (on pp. 445–6; *Dinsmore v. R. & M. S. R. Co.*, 12 Wis. R. 649; *Plymouth R. R. Co. v. Colwell*, 39 Pa. St. 337. A statutory power to convey after acquired property of any kind, is in derogation of a well established common law principle, and is an exception to a well recognized rule of law, and hence is to be strictly construed as against the grantees of the power and those claiming by virtue of an exercise of such power.—*Pennsylvania Railroad Company v. Canal Commissioners*, 21 Pa. St. 22.

The description in the mortgage of the land acquired and to be acquired, must be deemed to refer to the charter, and the law defines the land which the mortgage is designed to cover," and "that the rights of the mortgagees as against the judgment creditor, only extend to the particular lands designated by statute, and which the company was authorized to and did take for the use of the road.—*Seymour v. The Canandagua, &c. Railroad Company*, 25 Barb. 284; *Taber v. The Cincinnati Railway*, 15 Ind. 459; *Parish v. Wheeler*, 22

[Morgan & Raynor, Trustees, v. Donovan.]

N. Y. 498; *Walsh v. Barton*, 24 Ohio St. R. 28. And an execution creditor can levy on property of the company not so acquired. The company, although it may have acted *ultra vires* in the purchase, is, as well as those claiming under it, estopped from setting up the infirmity of its title.—22 N. Y. R. and 24 Ohio St. R. *supra*.

If the company had not the *right* and *power* to take this property *in invitum* for the purpose and in the manner of its acquirement, it could not have been conveyed in the mortgage; for the property which has only a potential existence, or which may be in expectancy or contingent, can not be mortgaged or assigned, unless the existence or expectancy be based on a *right in esse*.—19 Ala. R. 162; 35 Ala. 570; 42 Ala. 255; 11 Ala. 977; 2 Kent's Com. 144. The trust deed would not, even in a court of equity, give to defendants any title, or right in the property sued for. A lien in equity must have a specific reference to some designated property, either *in esse* or expectancy—property particularly pointed out or described.—25 Barb. *supra; Ludlow v. Hurd*, 1 Disney, 552; 1 Redf. on R'ways (4th ed.) 489, note. The defendants can not rely on the mortgage to Gardner and Butler, which is a second mortgage, and not connected with their title. At the time of the levy by the sheriff, the property was in the hands of the company's agent, Jacques. Even if the wharves had been surrendered to the trustees of the second mortgage, of which there is no evidence, and their possession had been confirmed by the United States Circuit Court at New Orleans—before the sale by the sheriff—the sale could not be avoided, as was suggested, by the doctrine laid down in the case of *Wiswall v. Sampson*, 14 How. 52. This property could not be brought under that rule. The United States Court of Louisiana could not have actual possession, by its receivers, of property situated in Alabama.— Revised Statutes United States, §§ 737–742, inclusive. No court can extend its arms so as to hold *in gremio legis* property situated without and beyond the confines of its territorial jurisdiction. "The circuit court of each district sits within and for that district, and is bounded by its local limits. Whatever may be the extent of their jurisdiction over the subject matter of suits, in respect to persons and property, it can only be exercised within the limits of the district."—*Toland v. Sprague*, 12 Peters' R. 300. See, also, *Boyce's Executors v. Grundy*, 9 Peters' R. 275. "A receiver's right to the possession of the debtor's property, is limited to the jurisdiction of his appointment."—*Booth v. Clark*, 17 Howard, 322 (on p. 334); High on Receivers, § 47. Courts have sometimes sought to bring property in foreign jurisdictions under

[Morgan & Raynor, Trustees, v. Donovan.]

the control of their receivers.—*Shaw v. Shore*, 5 L. I., N. S., ch. 79. But this power is not based on any jurisdiction over the thing itself, or any right to affect the property directly. It can only be enforced by an injunction on the parties within jurisdiction of the court, and rests entirely on the coercion of the person. It affects only such rights and interests as are represented in the cause or can be brought into the forum by proceedings in *personam*.—*Booth v. Clark, supra;* High on Receivers, § 170; Ib. § 471; *Brigham v. Luddinglon*, 12 Blatch C. C. 237.

BOYLES & OVERALL, same side.—The railroad company had no power under its charter to acquire the property in question. The power and authority conferred by the charter must be construed in connection with the mortgage, and when this is done, it will be seen that the railroad company had no authority to acquire any lands not to be used in connection with the business of operating said railroad.—4 Ala. 558; 36 Ala. 317.

2. Although the railroad company had no power under its charter to acquire lands, except such as were to be used in operating the railroad, yet Morgan sold and conveyed the lands to the railroad company and received the purchase-money and put the railroad company in possession of the lands, and he and all other persons who claim under or through his deed are estopped from denying title in the railroad company.—19 Miss. R. (11 S. & M.) 327; 1 Jones (N. C) L. 547; *Smith v. Kelly*, 12 Wal. R. 331; 19 Ala. R. 193; 27 Ala. R. 582; 3 Head. (Tenn.) 8; 2 Humph. (N. C.) 251; 4 Wash. C. C. 609; 7 Cal. 419; 1 Mass, 219; 2 A. K. Marsh (Ky.) 454; 17 Geo. 301; 19 Ind. 331; 31 Ill. 501. The railroad company is estopped from denying title in itself.—13 Pick. 116; 3 Litt. Ky. 334; 9 Cush. 540; 58 Ill. 78; 38 Ala. 395; 19 Ala. 436; 17 Ind. 211; 11 Ohio, 475; 4 Peters, 401; 6 Peters, 598; Shep. Touch. 53; 32 N. Y. 295.

A party cannot go behind an estoppel and set up a claim upon which it operates.—18 Ala. 514; 1 John C. R. 166; 1 Sandf. C. R. 244; 1 Mart. & Yerg. 333; 12 Allen (Mass.) 141; 6 Ohio, 87; 4 McCord, (S. C.) 246.

3. The mortgage only covered such lands as the company owned at the time it was made, and lands after acquired for railroad purposes.—25 Barb. R. 311; 3 Zabr. (N. J.) 511; 12 Wis. 649; 47 Penn. S. 465; 50 Mo. 30; 22 N. Y. 494; 2 Redfield on Railways, 484, 489 and 493; 11 Wis. 207; 32 N. H. 484; 3 Green Ch. 377; 53 Mo. 308; 18 Vt. 484.

4. No rights at law to after acquired property could be had by the trustees until they took possession.—25 Barb.

*supra ;* 18 B. Monroe R. 431; 14 Gray (Mass.) 566; 49 Ind. 441; 15 Ohio St. R. 523; 1 Otto R. 603; 12 Wal. 365. The trustees were not entitled to the earnings of the railroad prior to their possession—and property purchased with such earnings is liable to creditors.

STONE, J.—The argument is suggested that by the purchase of the property in controversy, The New Orleans, Mobile & Chattanooga Railroad Company did an act *ultra vires*, and that, therefore, the railroad corporation did not acquire any title which it could convey or pledge by mortgage deed. The title of plaintiff below—appellee here—rests on these foundations : First, a legal title to the premises in the defendant corporation ; second, a judgment and execution lien against such corporation ; and, third, a levy upon, and sale and conveyance of the title of the lands to the plaintiff below. A purchaser at sheriff's sale acquires only such title as the defendant in execution had ; and if his ownership be not a legal title, the holder of such deed can not maintain ejectment.—See *You v. Flinn*, 34 Ala. 409, 415, and authorities. Both parties, plaintiff and defendant, in the court below, trace their title to a common origin, the New Orleans, Mobile & Chattanoog Raailroad Company. Donovan, the plaintiff, was required to show a legal title in the corporation to maintain his suit; while the defendant could stand still and rely on the weakness of his adversary's title. We think the doctrine of estoppel can not be invoked in this case to benefit appellee. His purchase at sheriff's sale is an affirmation that the railroad corporation held a title—a legal title. His success in this suit depends on that. He can not be heard, in one and the same suit, to assert that other and incompatible proposition, that the corporation owned no property or interest in the lots which it could convey. The railroad company either had title, or it had not. We think both parties are estopped from disputing the common source of their titles.—*Gantt v. Cowan*, 27 Ala. 582.

If the contract by which the railroad company acquired the lots had remained executory, and there had been a suit to enforce such contract, or to recover for its breach, then the question of *ultra vires* would have been material; and if successfully asserted would have defeated a recovery, whether the suit was brought by or against the corporation.—*Grand Lodge v. Waddill*, 36 Ala. 313; *Waddill v. Ala. & Tenn. R. R.* 35 Ala. 323; Dil. Munic. Corp. § 381, and note 2, 749; Abb. Corp. 258, §§ 414, 415; 870-1, §§ 3, 4, 12; Cooley Cons. Lim. 196.

And in some other forms of proceeding, such, for instance,

[Morgan & Raynor, Trustees, v. Donovan.]

as a proceeding to vacate the charter for misuser, or to set aside the contract as without the pale of the corporate authority, by one or more persons interested in the corporation, the question we are considering would be pertinent and important.—Abb. Corp. 413, § 1, *et seq;* *Whitman G. & S. Mining Co. v. Baker,* 3 Nev. 386.

It is neither a ground of recovery or defense in this action.—Abb. Corp. 258, §§ 416, 423; *1b.* 870-1, §§ 9, 10, 11; *Whitehead v. Vineyard,* 50 Mo. 30; 3 Nev. 386, *supra;* *Waldo v. Chicago St. P. R. R. Co.* 14 Wisconsin, 575; *Farmers & M. Bank v. Railroad Co.* 17 Wis. 372.

We think the sole question necessary to be considered in this case is, whether the mortgages embrace and convey the lots and wharves in controversy. If the terms of the granting clauses are broad enough and specific enough to include them, then we think there is no question that the title to the defendants is paramount to that of plaintiff. On the other hand, if the mortgages do not convey them, then the plaintiff has the superior title. We quote from the act of incorporation only as aid in enabling us to determine the true meaning and scope of the mortgage conveyances.

The act which incorporated the New Orleans, Mobile & Chattanooga Railroad Company (now New Orleans, Mobile & Texas Railroad Company), approved Nov. 24, 1866—Pamph. Acts, 6—contains the following grants of power; and, it is believed, none other that bear on any question presented by this record:

By section 1, the corporation is "authorized to have and to hold real and personal property for the object, purpose, and business of said corporation within this State, or within any other State, sovereignty or government that may sanction, authorize, and permit the same."

By section 3, " to own and possess any real and personal estate that may be granted, devised or given to it, by or from any person or persons, corporation or association, and to obtain by purchase, and to own and possess any real and personal estate that may be necessary and convenient for the construction, maintenance, and management of the said railroads, . . . . to take and hold for the same and for the purpose of necessary depots, stations, cuttings, turnouts, and for obtaining stone, and gravel, and timber for the construction of said railroads, and lands belonging to the said State of Alabama, and extend along or adjacent to the route or course of said railroads, that may be necessary for the construction, maintenance and security of said railroads; and said corporation is also hereby authorized to lay out their said railroads, or either of them, within the State of

Alabama, not exceeding two hundred feet wide, upon any lands within said State, and to take and possess the same ; and for the purpose of necessary turnouts, depots, cuttings, and embankments, and for obtaining stone, gravel, and timber for the construction and maintenance of said railroads, to take and possess as much more lands as may be necessary for the construction, maintenance, and security of said railroads."

Section 6 contains the following language : "That said corporation, being hereby authorized to purchase, receive, and hold such real estate as may be necessary and convenient in accomplishing the object for which this corporation is organized, it may, by its agents, surveyors, engineers, servants, enter upon all lands and tenements through which it may conclude to make such railroads; and survey, lay out, and construct the same, and may agree and contract for the land, right of way, with the owners of the land through which it extends, to make said roads."

Section 15 : "And, in like manner, this corporation may obtain, by purchase or grant, from any person or corporation, and afterwards maintain, manage, use, and enjoy any railroad, railroad property and appurtenances, any steamboats, piers, wharves, and the appurtenances thereunto belonging, that the said directors may deem necessary, profitable and convenient for this corporation to own, use, and manage in connection with its said railroads."

Section 17 : " That this corporation is authorized and empowered, from time to time, to borrow money, or to purchase property upon its own credit, for the purpose of constructing and maintaining said railroads, or establishing continuous and connecting line of railroads, as heretofore provided ; and, as evidence of the indebtedness of said company for such loans, on the purchase of said property, may issue its corporate bonds and promissory notes, bearing interest at a rate not to exceed eight per cent. per annum, and to secure the payment of said bonds and notes, may mortgage its railroad, its capital stock, its corporate franchises, and any of its real and personal property, or any part or portion of the same."

On the first day of January, 1869, the said railroad corporation executed its first mortgage to trustees to secure the payment of its first mortgage bonds, about four millions of dollars in amount ; and therein conveyed "the railroad of the party of the first part, lying between the city of New Orleans, in the State of Louisana, and the city of Mobile, in the State of Alabama, and within the limits of said cities, as the same is located, surveyed, and constructed, or shall be here-

after constructed, by the party of the first part in the States of Louisiana and Mississippi, and Alabama, and on the route and line of said railroad, between the cities aforesaid, including the right of way and all other rights, interests and estate of the party of the first part, in and to the lands occupied by said railroad, or hereafter acquired, owned and occupied by said party of the first part, including all depots, station-houses, engine-houses, car-houses, freight-houses, wood-houses, or sheds, and all machine-shops, and other shops and buildings now owned and occupied, or hereafter acquired, in connection with the said portion of said railroads, situate or lying upon or within the limits of said cities, or upon or adjacent to the said portion of said railroad and the route or line thereof, together with the superstructure and tracks thereon, and including the iron rails, and all the appurtenances thereof; also, all rolling stock, engines, cars, tenders, tools, machinery, fixtures, fuel, and materials, and all other personal property appertaining to, or used, or hereafter used, by the party of the first part, exclusively, for the constructing, operating, repairing or replacing of said portion or section of its railroad, in and between said cities of New Orleans and Mobile, or any part thereof, now belonging to the said party of the first part, or to be by the said party of the first part hereafter acquired and applied to the use of said portion of said railroad; also, all the franchises, rights and privileges of the party of the first part, corporate or otherwise, to construct, maintain and manage said portion or section of its said railroad, or connected with or relating to the same, or the construction, maintenance, or use thereof, . . . . together with all and singular the tenements, hereditaments and appurtenances thereto belonging, or in anywise appertaining, and the reversions, remainders, tolls, incomes, rents, issues and profits thereof; and, also, all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in and to the same, and any and every part thereof."

On the 8th day of March, 1869, the said corporation made a second mortgage to trustees, to secure the payment of its second mortgage bonds, about four millions additional, and therein conveyed "any and all railroad or railroads of the said party of the first part, lying in the States of Texas, Louisiana, Mississippi, Alabama, Georgia and Tennessee, or any or either of them, constituting parts, portions or sections of its main or branch lines of railroads on the general route prescribed by its charter, or any amendment thereto, or hereafter to be authorized, whether now owned or hereafter

[Morgan & Raynor, Trustees, v. Donovan.]

to be constructed, surveyed, located or acquired, by the said party of the first part, including the right of way and all other rights, interests and estate of the party of the first part, in and to the lands occupied by said railroad or railroads, or hereafter to be acquired for that purpose, and in and to all lands owned and occupied, or hereafter to be acquired, owned and occupied by said party of the first part, for constructing, repairing, operating, or doing the business of its said railroad or railroads, or of any such branch railroad, and used therefor, or any part thereof; and including all depots, station-houses, engine houses, car houses, freight houses, store-houses, wharves, warehouses, wood houses or sheds, and all machine shops, repair shops, business offices, and other shops, offices and buildings, now owned and occupied, or hereafter to be acquired, and used in connection with its said railroad or railroads, or branches, or any part thereof, together with the superstructure or track now thereon, or hereafter to be placed thereon, and including the iron, rails, and all the appurtenances thereof; also, all rolling stock, engines, cars, tenders, tools, machinery, steamboats, tugboats, and other boats and vessels, and their engines, boilers, machinery, tackle, apparel and furniture, fixtures, fuel and materials, and all other personal property appertaining to or used, or hereafter to be used, by the party of the first part, exclusively for the constructing, operating, repairing, replacing, or conducting the business of its said railroad or railroads, or branches, above mentioned, or any part thereof, now belonging to the said party of the first part, or to be by the said party of the first part hereafter acquired and applied to the use of said main or branch lines of its said railroad or railroads, or any part thereof; also, all the franchises, rights and privileges of the said party of the first part, corporate or otherwise, to construct, maintain and manage said railroad or railroads and branches, and every part thereof, or connected with or relating to the same, or the construction, maintenance and use thereof, or any part thereof, whether derived from the State of Alabama under its said act of incorporation, or from grants from other States, or from the United States of America, or from any counties, cities, towns, or corporations, or from any person or persons whatsoever or whomsoever; and also the right and privilege to receive the tolls, rents and incomes to be had therefrom, and the exercise of the same upon all parts thereof, and in all States, counties, cities, towns, and all places within or through which the same, or any part thereof, is now or shall hereafter be constructed and operated, together with all and singular the tenements, hereditaments and appurtenances thereto belonging, or in

[Morgan & Raynor, Trustees, v. Donovan.]

any wise appertaining, and the reversions, remainders, tolls, incomes, rents, issues and profits thereof, and also all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in and to the same, and any and every part thereof."

The term railroad, in its broadest sense, has been sometimes ruled to be very comprehensive, and to include within it the franchise, easement or right of way, road-bed, superstructure, depot buildings, turn-outs, rolling stock, shops, tools, materials, and all other property, real and personal, owned and used in connection with the road, or its operation. *Pierce v. Emery*, 32 N. H. 484. The grants of power to acquire real estate, found in the act incorporating the New Orleans, Mobile & Chattanooga Railroad Company, are attended and qualified by the expressions, "that may be *necessary, convenient*, for the *construction, maintenance, management, security* of the railroad." The clause most relied on by appellants—that which gives authority to acquire steamboats, piers, wharves, &c.—limits the power of the directors in the matter of their purchase, to such as they may "deem necessary, profitable and convenient for this corporation to own, use and manage in connection with its said railroads." So, in the mortgages, qualifying clauses abound; such as, "the lands occupied by said railroad, or hereafter acquired, owned and occupied by said party of the first part, including all depots, &c., now owned and occupied, or hereafter acquired, in connection with the said portion of said railroads, situate or lying upon or within the limits of said cities, or upon or adjacent to the said portion of said railroad and the route or line thereof."

The clause in the second mortgage most relied on is as follows : "Including all depots, station houses, engine houses, car houses, freight houses, store houses, wharves, warehouses, wood houses or sheds, and all machine shops, repair shops, business offices, and other shops, offices and buildings, now owned and occupied, or hereafter to be acquired and used in connection with its said railroad or railroads, or branches, or any part thereof, together with . . steamboats, tug-boats, and other boats and vessels, and their engines, boilers, machinery, tackle, apparel and furniture, fixtures, fuel and materials, and all other personal property appertaining to, or used, or hereafter to be used by the party of the first part, exclusively for the constructing, operating, repairing, replacing, or conducting the business of its said railroad, or railroads or branches above mentioned, or any part thereof."

It will thus be seen, that not only all the grants of power to acquire property found in the charter, but all the words of conveyance employed in the mortgages, speak of property to be owned, occupied and used in the construction and operation of the road, or in connection therewith. Property, real or personal, not wanted or used for one of these purposes, or in connection with one of these purposes, has no clause in either of the mortgages to cover it.

In the *State v. Commissioners of Mansfield*, 3 Zabr. 510, the question was, whether a legislative commutation, or exemption from taxes, accorded to a railroad company, exempted from levy and assessment of taxes, certain houses owned by the railroad company, "situate near the line of their road, and used exclusively by workmen and mechanics in the employ of the company." The charter of the company declared "that no other tax or impost shall be levied or assessed upon the said company." The court ruled that the houses did not fall within the exemption, and employed the following language: "Power to construct a railroad, and establish transportation lines upon it, necessarily includes the essential appendages required to complete and maintain such a work and carry on such a business; as the power to erect and maintain suitable depots, car houses, water tanks, shops for repairing engines, &c., houses for switch and bridge tenders, coal or wood yards for fuel for the use of their locomotives, &c., and these are within the fair construction of the exemption clause, because they are necessary and indispensable to the operations of the company, and the accomplishment of the objects of their charter. But there must be a limit somewhere to this incidental power of the company to enlarge its operations and extend its property, without taxation, under this exempting clause, and that limitation, I think, must be fixed *where the necessity ends, and the mere convenience begins.* The necessary appendages of a railroad and transportation company are one thing, and those appendages which may be convenient means of increasing the advantages and profits of the company are another thing."

In *Walsh v. Barton*, 24 Ohio State, 28, the question, as in this case, was between an execution purchaser and a prior mortgagee. The court said: "The testimony shows that the railroad was not located on the lands embraced in the purchase of the defendant below, nor were the lots purchased by him ever used or appropriated for railroad purposes. The question then, is this: Was the entire tract of land embraced in the mortgage? We think not. The words "used or appropriated for the operating or maintaining the said road," restrict the operation of the granting words, con-

[Morgan & Raynor, Trustees, v. Donovan.]

tained in the mortgages, to such property, personal or real, of the company, as then was, or thereafter might be, used or appropriated for operating or maintaining the road. Any property which the company then owned, or afterward acquired, which has in fact been used or appropriated for operating and maintaining the road, and none other, is subject to these mortgages." In *Parrish v. Wheeler*, 22 N. Y. 494, a railroad corporation had given a mortgage on its real estate, railroad, bridges, ferries, &c., locomotives, engines, cars, tenders, shops, tools and machinery, and "all other personal property whatsoever, in any way belonging or appertaining to the said railroad of the said company." Canal boats were purchased and paid for with the funds of the corporation, and used and run by it in connection with the railroad, but beyond its termination. It was held the canal boats did not pass by the mortgage.

In *Shamokin Valley Railroad Co. v. Livermore*, 47 Penn. State, 465, a railroad company, holding town lots adjoining their road bed, ostensibly for a train to connect with river navigation, having mortgaged the entire road with its corporate privileges and appurtenances, but without specific mention of the lots, became embarrassed, and the mortgaged property was sold under proceedings thereon by the sheriff; the lots having been again sold under execution against the company, and bought by the plaintiffs therein, in an ejectment therefor by them against the purchasers under the mortgage, the jury were instructed that if the lots were not appurtenant to the road, and essential and indispensably necessary to the enjoyment of its franchises, and as such included in the mortgage, the plaintiffs were entitled to recover; referring the question of appurtenancy and necessity to them as matters of fact. It was held that the instruction was free from error. We think the word "indispensably" before the adjective "necessary," states the rule too strongly; and that it should have been omitted.

In *Dinsmore v. Racine and Mississippi R. R. Co.* 12 Wisconsin, 649, the granting clause of the mortgage was: "The railroad company granted and sold," &c., "all their railroad, with its superstructure, track and all other appurtenances, made or to be made in the State of Wisconsin, . . and all the right and title of the said parties of the first part, to the land on which the said railroad is and may be constructed, together with all rights of way now acquired and obtained, or hereafter to be acquired or obtained by the said parties of the first part, and including the depots, engine-houses, shops and other constructions at the city of Racine aforesaid, and at said town of Beloit, and all other places

along the line of said railroad, and the lots, pieces or parcels of land on which the same are or may be erected, and all the pieces of land which shall be used for depot and station purposes, with the appurtenances, and all the embankments, bridges, viaducts, culverts, fences and structuary thereon, and all other appurtenances belonging thereto, and all the franchises, privileges and rights of the said parties of the first part, of, in, to, or concerning the same, . . to have and to hold the said premises and every part thereof, with the appurtenances, unto the said parties of the second part." The railroad company had purchased a tract of land, detached from the track of the railroad, "for the purpose of getting wood and timber therefrom, to be used on said railroad." The question was, whether these lands passed by the mortgage? It was ruled that they did not. To the same effect are *Seymour v. C. & N. F. R. R. Co.* 25 Barb. 284; *Vt. Cen. R. Co. v. Burlington,* 28 Vt. 193; *Galveston Railroad Co. v. Cowdrey,* 11 Wall. 459. And we do not consider the following authorities, rightly understood, as warring in the least with these views.—*Harris v. Elliott,* 10 Pet. 25; *Wilson v. Boyce,* 2 Otto, 320; *Dillon v. Barnard,* 21 Wall. 430; *Whitehead v. Vineyard,* 50 Mo. 30; *State v. Nor. Cen. Railway Co.* 18 Md. 173. In *Pierce v. Emery,* 32 N. H. 485, it was held that the mortgage conveyed everything the corporation possessed; and, even with that predicate, it would not be safe to adopt the reasoning of the opinion, as a guide in other cases. See, also, *Meyer v. Johnston,* 53 Ala. 237.

It results from what we have said above that the mortgages conveyed only such property, real and personal, as was useful and necessary, and employed in the construction, maintenance, operation, preservation, repair, or security of the road; and that property owned or acquired, and not used, or to be used in connection with the railroad, and in promotion of the direct and proximate purposes of its construction, was not thereby conveyed. Buying off an opposition line of steamers, with a view, not of employing, but of withdrawing them from the field of competition, with all attendant stipulations and incidents, falls without the pale of powers conferred by the act of incorporation, and is not covered by any provision in the granting clauses of the mortgages.

The several rulings of the Circuit Court, excepted to, are in accordance with the views above expressed, and the judgment of the Circuit Court is affirmed.