# FRITTS *v.* PALMER.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 72. Submitted November 6, 1889. — Decided November 25, 1889.

The constitution of Colorado provided that no foreign corporation should do business in the State without having a known place of business and an agent upon whom process might be served. A statute of the State made provision for the filing by such corporation with the Secretary of State of a certificate showing its place of business and designating such agent or agents, and also a copy of its charter of incorporation, or of its certificate of incorporation under a general incorporation law; and, in case of failure to do so, that each and every officer, agent and stockholder of the corporation should be jointly and severally personally liable on its contracts made while in default. Said act further provided that no corporation, foreign or domestic, should purchase or hold real estate except as provided in the act. The act did not indicate a mode by which a foreign corporation might acquire real estate in Colorado. G.,

being the owner in fee of a tract of realty in that State, conveyed it by deed of warranty to a corporation organized under the laws of Missouri, which had not then attempted, and did not afterwards attempt to comply with those provisions of the constitution or laws of Colorado. F., the defendant below, claimed through this corporation. Some months after his deed to the corporation, G. executed, acknowledged and delivered a quit-claim deed of the premises to the grantor of P., the plaintiff below : *Held,*

(1) That perhaps the reasonable interpretation of the statute was that a foreign corporation should not purchase or hold real estate in Colorado until it should acquire, in the mode prescribed by the local law, the right to do business in that State ;

(2) That these constitutional and statutory provisions were valid so far as they did not directly affect foreign or interstate commerce ;

(3) That the company violated the laws of the State when it purchased the property without having previously designated its place of business and an agent ;

(4) But that the deed was not thereby necessarily made absolutely void as to all persons and for every purpose, inasmuch as the constitution and laws of Colorado did not prohibit foreign corporations from purchasing and holding real estate within its limits ;

(5) That the penalty of personal liability of officers, agents and stockholders in case of non-compliance with the provisions of the statute, having apparently been deemed by the state legislature sufficient to effect its object, it was not for the judiciary to enlarge that penalty, by forfeiting the estate for the benefit of parties claiming under a subsequent deed from the same grantor ;

(6) That the grantee under the subsequent quit-claim deed could occupy no better position than the grantor, common to both parties, would have occupied if he had himself brought the action ; and that, in that case, it could not have been maintained.

THIS was an action in the nature of an action of ejectment. Judgment for the plaintiff, to which this writ of error was sued out. The case is stated in the opinion.

*Mr. L. C. Rockwell, Mr. E. A. Reynolds* and *Mr. Bertram Ellis* for plaintiffs in error.

*Mr. Joseph Shippen* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an action in the nature of ejectment to recover the possession of certain real property in Gilpin County, Colorado, namely, the North Comstock, Grand View, Clipper and Com-

stock lodes, and a building lot in Central City, in the same county, together with the dwelling-house thereon, the fee and possession of all which property were claimed by the plaintiff, the present defendant in error.. The defendants admitted their possession of the premises described in the complaint, except the Clipper lode, and alleged their ownership and right of possession of the other property. They distinctly disclaimed all interest in the Clipper lode, and denied that they were or had ever been in possession of it. A trial by jury was waived in writing by the parties, and the case was heard on an agreed statement of facts, upon which the court was asked to declare the law and enter judgment accordingly. Judgment was rendered in favor of the plaintiff for the possession of all the property described in the complaint, including the Clipper lode. The question to be determined is whether the judgment is supported by the agreed facts.

These facts are in substance as follows : The common source of title is William Groshon, who, on the 16th of June, 1877, at Central City, in the State of Colorado, conveyed, with warranty, all the property described in the complaint, to the Comstock Mining Company, a corporation organized under the laws of Missouri for the purpose of carrying on mining business, and with the object expressed in its articles of incorporation, of purchasing, owning and controlling mining property, both real and personal, in the State of Colorado, and of conducting a mining business therewith. This deed was duly recorded in the proper local office on the 25th of June, 1877. Before the purchase from Groshon the company was engaged in the prosecution of its mining business at and near Central City, where it established an office.

On the day of the execution of Groshon's deed, the company made to Ezra D. Fritts its three promissory notes, aggregating thirty thousand dollars, which were intended to be used and were used in part payment of the price of the property conveyed to it; and, in order to secure the payment of the notes, it executed to Thatcher, as trustee, a deed of trust upon the property, except the Clipper lode, conditioned that on default in the payment of either of the notes or the

interest thereon, the trustee might sell and dispose of the said mining property. That deed of trust was duly recorded on the 26th of June, 1877.

On the 5th of January, 1878, default having occurred in the payment of the notes, the deed of trust was foreclosed under the power of sale contained in it, and on that day Thatcher executed, acknowledged and delivered his deed for all said real estate and mining property (except the Clipper lode) to Fritts. That deed was duly recorded January 7, 1878.

The defendants claimed title and possession by virtue of divers mesne conveyances, in due form, from the company and its assigns under the above deed of trust, for all of the property, excepting the Clipper lode, which has never been conveyed by it.

On the 13th of April, 1878, Groshon executed, acknowledged, and delivered his deed of quit-claim of all the real estate and mining property in the complaint described to Samuel S. Porter. That deed was delivered to Porter on the 20th of May, 1878, but has never been recorded. The latter by his deed of quit-claim, executed May 20, 1878, conveyed to defendant Palmer. The latter deed was delivered to the grantee on the 25th of May, 1878, but it remains unrecorded. Afterwards, June 28, 1879, Palmer filed in the office of the clerk and recorder of the county where the property is situated notice, according to law, of the bringing of this suit, and the object thereof.

The Comstock Mining Company at the time of its purchase from Groshon had not, nor has it since that time, complied or attempted to comply with section ten of article fifteen of the constitution of Colorado, nor with sections twenty-three and twenty-four of chapter nineteen of the General Laws of that State, otherwise known as sections 260 and 261 of chapter 19 of the General Statutes of Colorado, 1883, prescribing the terms and conditions upon which foreign corporations may do business in that State.

A copy of the incorporation laws of Missouri, under which this company was organized, was, at the time of its organization, on file in the office of the Secretary of State of Colorado,

but was not filed by it. Its articles of incorporation were filed in the office of the clerk and recorder for Gilpin County, where its business interests were located, on August 10, 1877, and a copy of the incorporation laws of Missouri, under which the company was organized, was also on file in the same office at and after the time the company was organized.

The defendants, during the time of their possession of the property, have held the same in good faith under the above deeds, and have paid taxes legally assessed and levied upon it, to the amount of $400; and plaintiff has paid no taxes thereon. They have put improvements upon the property, in the way of building and repairing the dwelling-house described in the complaint, of the value of $350.

It is clear, from the facts agreed, that the object of Groshon's conveyance to the Comstock Mining Company was to pass to that corporation whatever interest he had in the property. It is equally clear that under the trust deed to Thatcher, the sale and conveyance to Fritts, and the subsequent mesne conveyances to the defendants, the latter acquired whatever interest the Comstock Mining Company got by Groshon's deed to it.

But it is contended that no title or interest whatever passed from Groshon, by his deed of June 16, 1877, even as between him and the company, and, consequently, it was competent for him, at his pleasure, and notwithstanding he received the consideration for which he stipulated, and even after the sale and conveyance of the property under the deed of trust, to make to other parties a quit-claim deed that would override, not only his conveyance to the Comstock Mining Company, but all subsequent conveyances based upon it.

This proposition is based upon certain provisions of the constitution and laws of Colorado relating to foreign corporations.

The constitution of that State declares that "no foreign corporation shall do any business in this State without having one or more known places of business, and an authorized agent or agents in the same, upon whom process may be served." Art. XV. § 10.

The statutory provisions, for failing to comply with which

the Comstock Mining Company is alleged to have taken nothing by Groshon's conveyance to it, are these:

"Sec. 260. Foreign corporations shall, before they are authorized or permitted to do any business in this State, make and file a certificate signed by the president and secretary of such corporation, duly acknowledged, with the Secretary of State, and in the office of the recorder of deeds of the county in which such business is carried on, designating the principal place where the business of such corporation shall be carried on in this State, and an authorized agent or agents in this State residing at its principal place of business upon whom process may be served; and such corporations shall be subjected to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers. And no foreign or domestic corporation established or maintained in any way for pecuniary profit of its stockholders or members shall purchase or hold real estate in this State, except as provided for in this act; and no corporation doing business in the State, incorporated under the laws of any other State, shall be permitted to mortgage, pledge or otherwise encumber its real or personal property situated in this State, to the injury or exclusion of any citizen, citizens or corporations of this State who are creditors of such foreign corporation, and no mortgage by any foreign corporation, except railroad and telegraph companies, given to secure any debt created in any other State, shall take effect as against any citizen or corporation of this State until all its liabilities due to any person or corporation in this State at the time of recording such mortgage have been paid and extinguished.

"Sec. 261. Every company incorporated under the laws of any foreign State or kingdom, or of any State or Territory of the United States beyond the limits of this State, and now or hereafter doing business within this State, shall file in the office of the Secretary of State a copy of their charter of incorporation, or, in case such company is incorporated by certificate under any general incorporation law, a copy of such

certificate and of such general incorporation law, duly certified and authenticated by the proper authority of such foreign State, Kingdom, or Territory." Gen. Stat. Col. 1883, c. 19.

Precisely what was meant by the words, in section 260, "except as provided for in this act," is difficult to tell, since the act does not indicate any particular mode in which a foreign corporation may acquire real estate in Colorado. But, perhaps the reasonable interpretation of the statute is that a foreign corporation shall not purchase or hold real estate in Colorado, for purposes of its business, until it first acquires, in the mode prescribed by the local law, the right to do business in that State.

No question is made in this case — indeed, there can be no doubt — as to the validity of these constitutional and statutory provisions, so far, at least, as they do not directly affect foreign or interstate commerce. In *Cooper Manufacturing Co.* v. *Ferguson*, 113 U. S. 727, 732, this court said that "the right of the people of a State to prescribe generally by its constitution and laws the terms upon which a foreign corporation shall be allowed to carry on its business in the State, has been settled by this court." It may be assumed, therefore, that the Comstock Mining Company, being a corporation of another State, had no right to do business in the State of Colorado until after it had one or more known places of business within its limits, and an authorized agent designated upon whom process could be served, nor until it had made and filed in the proper office the certificate prescribed by section 260 of the statute relating to foreign corporations. It may also be assumed, for the purposes of this case, that this company violated the law of that State when it purchased the premises here in controversy without having, in the mode prescribed by the statutes of Colorado, previously designated its principal place of business in that State, and an agent upon whom process might be served.

But it does not follow that the title to the property conveyed to the Comstock Mining Company remained in Groshon, notwithstanding his conveyance of it to that company, in due form, and for a valuable consideration.

The constitution and laws of Colorado, it should be observed, do not prohibit foreign corporations altogether from purchasing or holding real estate within its limits. They do not declare absolutely or wholly void, as to all persons, and for every purpose, a conveyance of real estate to a foreign corporation which has not previously done what is required before it can rightfully carry on business in the State. Nor do they declare that the title to such property shall remain in the grantor, despite his conveyance. So far as we are aware, the only penalty imposed by the statutes of Colorado upon a foreign corporation carrying on business in the State before acquiring the right to do so, is found in section 262 of the same chapter, which provides: "A failure to comply with the provisions of sections 23 and 24 [sections 260 and 261] of this act shall render each and every officer, agent and stockholder of any such corporation, so failing therein, jointly and severally personally liable on any and all contracts of such company made within this State during the time that such corporation is so in default." The fair implication is that, in the judgment of the legislature of Colorado, this penalty was ample to effect the object of the statutes prescribing the terms upon which foreign corporations might do business in that State. It is not for the judiciary, at the instance or for the benefit of private parties, claiming under deeds executed by the person who had previously conveyed to the corporation, according to the forms prescribed for passing title to real estate, to inflict the additional and harsh penalty of forfeiting, for the benefit of such parties, the estate thus conveyed to the corporation and by it conveyed to others. If Groshon, the grantor of the Comstock Mining Company, had himself brought this action, the injustice of his claim would be conceded. But the present plaintiff, who asserts title under a quit-claim deed from Groshon made after the property had passed, by the sale under the deed of trust, from the mining company, cannot, in law, occupy any better position than the original grantor would have done if he had himself brought this action. If the legislature had intended to declare that no title should pass under a conveyance to a foreign corporation purchasing real estate before it acquires the

right to engage in business in the State, and that such a conveyance should be an absolute nullity as between the grantor and grantee, leaving the grantor to deal with the property as if he had never sold it, that intention would have been clearly manifested. If the construction placed by the plaintiff upon the constitution and statutes of Colorado be sound, there would be some ground to say that a foreign corporation, taking a conveyance of real estate for purposes of its business in Colorado, before it had acquired the right to do business there, would have no standing in the courts of that State for the purpose of having the estate so acquired protected against trespasses upon it. And yet the contrary has been held by the Supreme Court of Colorado in *Utley &c.* v. *Clark-Gardner Mining Company*, 4 Colorado, 369. That was an action of trespass brought by a New York corporation. The declaration in one count charged the defendants with breaking and entering upon certain claims of the Gardner lode and breaking ore, etc. The other count was *de bonis asportatis*. The defendants filed a special plea in abatement, alleging that the plaintiff was a foreign corporation, and had never complied with the above statutory provisions as to filing a certificate designating its principal place of business in the State and an authorized agent upon whom process could be served. The court, waiving any expression of opinion as to what would be its decision, if the plea had been one in bar of the action, held that the prohibition in respect to foreign corporations, while they extended to the carrying on of business before complying with the laws of the State, did not abridge the right of a foreign corporation to sue in the courts of Colorado.

The views we have expressed are supported by several adjudications in this court in cases somewhat analogous to the present one, among which are those arising under sections 5136 and 5137 of the Revised Statutes of the United States. The first of those sections authorizes national banking associations to loan money on personal security. The other section provides : "A national banking association may purchase, hold and convey real estate for the following purposes, and for no others : First, such as shall be necessary for its immediate ac-

commodation in the transaction of its business. Second, such as shall be mortgaged to it in good faith by way of security for debts previously contracted. Third, such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings. Fourth, such as it shall purchase at sales under judgments, decrees or mortgages held by the association, or shall purchase to secure debts to it. But no such association shall hold the possession of any real estate under mortgage, or the title and possession of any real estate purchased to secure any debts due to it, for a longer period than five years."

In *National Bank* v. *Matthews*, 98 U. S. 621, 627, the question was directly presented whether a national bank was entitled to the benefit of a deed of trust upon real estate, which, with the note described in it, was taken — not as security for, or in satisfaction of, debts previously contracted in the course of its dealings, but — for a loan made by the bank at the time the deed of trust was assigned to it. The Supreme Court of Missouri held the deed of trust to be void, in the hands of the bank, because its loan was made upon real estate security in violation of the statute. But this court, after observing that the result insisted upon did not necessarily follow, said : " The statute does not declare such a security void. It is silent upon the subject. If Congress so meant, it would have been easy to say so; and it is hardly to be believed that this would not have been done, instead of leaving the question to be settled by the uncertain result of litigation and judicial decision. Where usurious interest is contracted for, a forfeiture is prescribed and explicitly defined." Again : " Where a corporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object. It is valid until assailed in a direct proceeding, instituted for that purpose."

In *National Bank* v. *Whitney*, 103 U. S. 99, 103, which involved the validity of a mortgage to a national bank, to secure future advances made to the mortgagor, the right of the bank to enforce the mortgage was sustained upon the principles announced in *National Bank* v. *Matthews*. The court said :

"Whatever objection there may be to it as security for such advances from the prohibitory provisions of the statute, the objection can only be urged by the government." To the same effect are *Swope* v. *Leffingwell*, 105 U. S. 3, and *Reynolds* v. *Crawfordsville Bank*, 112 U. S. 405, 412.

In *Smith* v. *Shelley*, 12 Wall. 358, 361, which was an action of ejectment, the question was collaterally raised as to the validity of the title acquired by a banking institution, under a deed of the premises, in consideration of a certain sum paid by it to the grantor. The bank was created by an act of the territorial legislature of Nebraska, with power "to issue bills, deal in exchange, and to buy and possess property of every kind." But when that act passed, there was in force an act of Congress, which provided that "no act of the territorial legislature of any of the Territories of the United States, incorporating any bank or any institution with banking powers or privileges, hereafter to be passed, shall have any force or effect whatever, until approved and confirmed by Congress." The act of the territorial legislature incorporating the bank, above referred to, never was approved or confirmed by Congress. It was urged, as an objection to the deed made to the bank — upon which deed one of the parties relied — that it was not a competent grantee to receive title. This court said: "It is not denied that the bank was duly organized in pursuance of the provisions of an act of the legislature of the Territory of Nebraska; but it is said, it had no right to transact business until the charter creating it was approved by Congress. This is so, and it could not legally exercise its powers until this approval was obtained; but this defect in its constitution cannot be taken advantage of collaterally. No proposition is more thoroughly settled than this, and it is unnecessary to refer to authorities to support it. Conceding the bank to be guilty of usurpation, it was still a body corporate *de facto*, exercising at least one of the franchises which the legislature attempted to confer upon it; and, in such a case, the party who makes a sale of real estate to it is not in a position to question its capacity to take the title, after it has paid the consideration for the purchase. If, prior to the execution of

the deed, there had been a judgment of ouster against the corporation at the instance of the government, the aspect of the case would be different." See also *Myers* v. *Croft*, 13 Wall. 291, 295; *Jones* v. *Guaranty and Indemnity Co.*, 101 U. S. 622, 628; *Fortier* v. *New Orleans Bank*, 112 U. S. 439, 451.

To the above cases may be added those holding that an alien may take by deed or devise and hold against any one but the sovereign until office found. *Cross* v. *De Valle*, 1 Wall. 1, 13; *Governeur* v. *Robertson*, 11 Wheat. 332; *National Bank* v. *Matthews*, 98 U. S. 621, 628; *Phillips* v. *Moore*, 100 U. S. 208. Also, those holding that the question whether a corporation, having capacity to purchase and hold real estate for certain defined purposes, or in certain quantities, has taken title to real estate for purposes not authorized by law, or in excess of the quantity permitted by its charter, concerns only the State within whose limits the property is situated. It cannot be raised collaterally by private persons unless there be something in the statute expressly or by necessary implication authorizing them to do so. *Cowell* v. *Springs Company*, 100 U. S. 55, 60; *Jones* v. *Habersham*, 107 U. S. 174, 188.

It results from what has been said that the court erred in rendering judgment for the plaintiff for any part of the premises described in the complaint.

*The judgment is reversed, with directions to enter judgment upon the agreed statement of facts for the defendants.*

Mr. Justice Miller dissenting.

I earnestly dissent from the opinion of the majority of the court. I do not enter into the question of the circumstances under which a foreign corporation can do business within the limits of the State of Colorado under section 23 of the General Statutes of 1883 of that State, nor do I here consider or attach importance to the question of how far a party dealing with a foreign corporation which has not complied with the rules prescribed by the State to enable it to do business in the State is estopped by the presumption that, in making contracts with

it, it has recognized its official existence and its right to con-
tract. I base my dissent in the present case upon the follow-
ing emphatic language in the laws of that State:

"No foreign or domestic corporation established or main-
tained in any way for pecuniary profit of its stockholders or
members shall purchase or hold real estate in this State except
as provided for in this act."

It is very clear that the words "as provided for in this act"
have relation to the acts, prescribed for all corporations, of
filing with the Secretary of State, and the recorder of deeds
of the county in which that business is carried on, the neces-
sary statement of their corporate existence, properly certified,
and the appointment of agents in the State residing in its prin-
cipal place of business. The language I have just cited from
this statute is unambiguous, and is not a declaration of powers
and rights conferred upon these corporations; but it is pro-
hibitory, and declares that no corporation shall purchase or
hold real estate that has not complied with this requirement.
It has been a recognized doctrine of this court for a great
many years, perhaps a century, that the transfer of title to
real estate, whether by inheritance, by purchase and sale, or
by any other mode by which title to property is acquired, is
rightfully governed by the laws of the State in which the
land is situated. The policy of permitting corporations to
hold real estate has always been a restricted one. Corporate
bodies, whether for public use or for private purposes, have
always been subjects of limitation on their right to hold real
estate. It may be prohibited altogether. It may be allowed
with distinct limitations as to amount either in quantity or in
value. In this respect it is wholly within the control of legis-
lative action. I can conceive of cases where corporations have
been authorized to acquire a limited amount of real estate such
as the legislature may conceive to be useful and necessary to
the purpose for which they are organized, or to take property
for specific uses, in which the question as to whether they have
exceeded that amount or perverted the use may be one for the
State alone, and not of any private citizen. But the positive
declaration that a corporation shall not purchase or hold real

estate, which is not a grant of power, but an express denial of its power to hold any real estate under the circumstances mentioned, is in my opinion destructive of the right to hold any real estate at all under those circumstances. Whenever it is shown that any of these corporations have not complied with the requirements of the statute, they are forbidden to purchase or *hold* real estate. Any such purchase is therefore void. It is the positive declaration of the law of the land. The title does not pass, and it needs no inquest of the State to establish that fact. The title which would have passed if the corporation had a right to purchase does not pass. It remains in the party who attempted to grant or convey it. The grantee can neither purchase nor hold real estate. The assumption of the opinion of the court is that it may purchase and it may hold real estate. I have not time to give the authorities on this subject. They are numerous; but they are generally applicable to cases in which the granting power of the corporation is wanting in sufficient language to enable it to purchase and hold, and not to statutes which are in their terms prohibitory, forbidding and peremptory.