[No. 612.   December 20, 1895.]

# UNION TRUST COMPANY OF NEW YORK, Appellee, v. ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY; POSTAL TELEGRAPH CABLE COMPANY, Intervener, Appellant.

1. Intervention—Secs. 1890–1892, Comp. Laws, 1884—Equity.—Sections 1890–1892, Compiled Laws, 1884, relate to actions at law, and not to equitable proceedings. In such proceedings parties claiming an interest in the subject-matter may come in by intervening petition and litigate their rights, if any they have; and it is within the inherent power of courts of chancery to permit them to do so.

2. Right of Action of Foreign Corporation, Not Admitted to Do Business in Territory—Collateral Attack.—An objection that a foreign corporation has failed to file a copy of its charter and of the laws of the state or territory granting the same, and to designate an agent on whom process may be served, as required by statute, before it is authorized to do business in this territory, can not be raised in a collateral proceeding by intervention, but only in a direct proceeding by quo warranto for that purpose.

3. Telegraph Company—Right of Way Along Line of Railroad—Exclusive Privilege—Contract against Public Policy.—By section 5263, Revised Statutes of the United States, a railroad company is prohibited from entering into any contract granting an exclusive privilege over and along its right of way and through the public domain to any single telegraph company, where such railroad has acquired its right of way under and by virtue of an act of congress; and this act extends to all military and post roads, whether on the public domain, or on private property acquired by a railroad company by purchase or by condemnation proceedings; and a contract by a railroad company granting such privilege is against public policy, and void.   Trust Co. v. R. R., 63 Fed. Rep. 513; Tel. Co. v. Tel. Co., 96 U. S. 1.

Appeal, from an order sustaining a demurrer to the intervening petition filed, from the First Judicial District Court.   Reversed (with directions).

The facts are stated in the opinion of the court.

CHILDERS & DOBSON for appellant.

This is not a statutory intervention, but an intervention or petition for what is designated in equity an examination pro interesse suo, and the appropriate way to present the alleged rights of the petitioner in property, or to the use of the same, which is in the hands of receivers. Vault Co. v. McMetta, 153 U. S. 554; Kippendorf v. Hyde, 110 Id. 276; Jay v. St. Louis, 138 Id. 1; High on Rec., secs. 254, 255; Kennedy v. R'y, 3 Fed. Rep. 97; 2 Danl. Chy. Prac. 1057. See, also, Trust Co. v. R. R., 63 Fed. Rep. 517.

The petitioner having complied with section 5263, Revised Statutes, United States, has a right to place and maintain its line on the right of way and along the line of any postal road of the United States. The A., T. & S. F. R. R., and its leased lines in New Mexico, are postal roads. Sec. 5263, 5264, Rev. Stat. U. S., act July 14, 1866, 14 Sts. at Large, 221; Trust Co. v. R. R., 63 Fed. Rep. 610. See, also, Tel. Co. v. Texas, 105 U. S. 460; Tel. Co. v. Tel. Co., 96 U. S. 1.

The right granted by the statute is not restricted to such military or post roads as are on the public domain. Tel. Co. v. Tel. Co., supra; Act June 8, 1872, Rev. Stat. U. S., secs. 3964, 3965.

Both the attempt to grant exclusive privileges as to occupancy of the right of way, and the enjoyment of special facilities for construction and maintenance, and the denial of such privileges to all other telegraph lines are against public policy and void. Trust Co. v. R. R., supra, and citations. See, also, Gibbs v. Gas Co., 130 U. S. 396; Steam Nav. Co. v. Windsor, 20 Wall. 64.

The A., T. & S. F. R. R., having become the lessee, is charged with the performance of the public duties of the lessor, and could not make a contract with reference to the franchises of the lessor which the lessor itself could not make. U. S. v. R. R., 50 Fed. Rep.

28; Penn. Co. v. R. R., 118 U. S. 306; Thomas v. R. R., 101 Id. 28.

CATRON & SPIESS for appellee.

If appellant has any rights whatever which it may be authorized to insist upon by way of intervention, sections 1890, 1891, 1892, Compiled Laws, 1884, give it the only relief it can get in that way.

There are only two methods by which a telegraph company can obtain the right to enter upon and construct its line along the right of way of a railroad company; one is by the consent of the railroad company; and failing in that, by condemnation proceedings according to law. Tel. Co. v. R. R., 14 S. E. Rep. 803; A., T. & T. Co. v. Smith, 18 Atl. Rep. 910; St. Louis v. Tel. Co., 148 U. S. 92; Tel. Co. v. R. R., 6 Biss. 158; Tel. Co. v. Tel. Co., 7 Id. 367; Tel. Co. v. Tel. Co., 9 Id. 72; Tel. Co. v. R. R., 4 Fed. Rep. 284; 11 Id. 1.

The petition of appellant does not state facts to show sufficient interest in the subject of the litigation to entitle it to be filed. Cutting v. R'y, 45 Fed. Rep. 444; College v. Iowa Co., 32 Iowa, 520; Comp. Laws 1884, secs. 1890–1892, copied from Iowa statutes; Smith v. Gale, 144 U. S. 509.

If appellant could bring suit in any manner, it should have obtained leave to sue the receivers by original bill or by procedure under the statute, or other adequate remedy prescribed by law, but it could not proceed against the refusal of the court. Receivers v. Bank, 34 N. J. Eq. 450; Coburn v. Cedar Valley L. Co., 138 U. S. 196; Brassy v. R'y.

The power of the court extends only to sale of property upon final decree, and its preservation and economical management pending final decree. It can not embarrass or detract from the value of the property by authorizing an additional incumbrance. A., T. &

T. Co. v. Smith, supra; Beach on Rec., sec. 249; Goddard on Eas., 1; Van Wagner v. Van Nostrand, 19 Iowa, 422; Barlow v. McKinley, 24 Id. 70; Gerald v. Elley, 45 Id. 322; McGowan v. Myers, 60 Id. 257.

Appellant insists that this appeal should be dismissed, because the entire subject-matter of the controversy appealed from involves solely a matter of discretion, and is not subject to review. "A matter which rested in the sound discretion of the court can not be assigned for error." Pow. Ap. Pro., sec. 118; Meelish v. Richardson, 23 E. C. L. 276; Ins. Co. v. Hodgson, 6 Cranch, 206; Sims v. Hunbley, 6 How. 5; Spencer v. Lapsley, 20 Id. 267; Sparrow v. Strong, 3 Wall. 105; Embry v. Palmer, 107 U. S. 17.

A contract, even under more stringent provisions than in this case, is not illegal. R'y Co. v. A., T. & S. F. R., 110 U. S. 667; Express Cases, 117 U. S. 1; Dubuque v. Richmond, 19 Wall. 584; Pullman v. R'y, 115 U. S. 587; Wiggins Ferry Co. v. R'y, 73 Mo. 388.

See, also, as bearing upon the foregoing points, U. S. v. R'y, 56 Am. and Eng. R'y Cas. 51; Richmond v. R. R., 26 Iowa, 191; R. R. v. Express Co., 35 N. J. Law, 240; Palmer v. Stebbins, 3 Pick. 188; Rochester v. Hayden, 50 N. Y. 525; Tel. Co. v. Atty. Gen., 125 U. S. 640; Smith v. McCulloch, 104 U. S. 126; Leloupe v. Mohle, 127 Id. 640; Leeds v. Richmond, 102 Ind. 372; Allen v. Jones, 47 Id. 439; 56 Mich. 244; Chamberlain v. E. Port S. C. Co., 41 N. E. Rep. 43; W. R. B. Co. v. Dicks, 6 How. 507.

H. L. WALDO for receivers.

LAUGHLIN, J.—This is an action on an intervening petition in the above cause, brought by the Postal Telegraph Cable Company, for an order on the receivers of the Atchison, Topeka & Santa Fe Railroad Company, requiring them to grant to the intervening petitioner leave to construct a line of telegraph poles,

wires, etc., over and along the right of way of said
railroad company, and to attach the same to the
bridges along said right of way, and for aid and assist-
ance in transporting and distributing its men, mate-
rials, supplies, etc., along the same, from the southern
boundary line of the state of Colorado, through New
Mexico, to the city of Albuquerque, and for such other
rights, privileges, and facilities as may be necessary
and convenient in the construction, operation, and
maintenance of such line of telegraph by the Postal
Telegraph Cable Company, and as set out and prayed
for in said intervening petition. During January, 1894,
the Union Trust Company of the state of New York
filed its bill in chancery, in the district court in and
for the county of Santa Fe, against the Atchison,
Topeka & Santa Fe Railroad Company (which, for
brevity, will hereafter be styled the "Santa Fe Com-
pany"), for a foreclosure of a mortgage, and for the
appointment of receivers to take into custody all the
property belonging to the Santa Fe Company, and to
operate and manage the same pendente lite; and on
the same date receivers were appointed by the court,
and thereupon assumed and took full control of the
operation and management of all the property of the
Santa Fe Company. On June 11, 1894, the Postal
Telegraph Cable Company (which is, for brevity, here-
after styled the "Postal Company"), filed in said dis-
trict court an intervening petition in the cause, then
pending, of the Union Trust Company against the
Santa Fe Company. In the intervening petition, the
appellant alleged in substance that it was incorporated
under the laws of the state of New York, for the pur-
pose of constructing, operating, and maintaining a
general system of telegraph lines between each and
every postoffice, village, town, and city in the United
States; that it had accepted the condition prescribed
by section 5263 of the Revised Statutes of the United

States, and had thereby acquired the right to construct, maintain, and operate lines of telegraph over the public domain of the United States, and over and along any of the military and post roads of the United States; and that it had obligated itself to transmit all government telegrams at such rates as might be fixed annually by the postmaster general of the United States, and to transfer its lines to the United States, as provided by law, above cited; that it owns, and has constructed, and now uses and maintains, lines of telegraph in the United States, connecting nearly all the principal cities east of the Rocky Mountains with each other, and has opened and maintains over three thousand telegraph offices, between all of which offices, when required, it transmits government telegrams at rates annually fixed by the postmaster general, such rates for the current year being far below the general rate to the public for like services; that it is now engaged in constructing a main or trunk telegraph line from La Junta, in the state of Colorado, via Albuquerque, New Mexico, over and along the line of the Atchison, Topeka & Santa Fe Railroad Company, from the northerly line of the territory to a point near Albuquerque, thence along the right of way of the Atlantic & Pacific Railroad in New Mexico and Arizona, and into the state of California, to Mojave, where it is to connect with the Pacific Postal Telegraph Company's lines; that the Santa Fe Company's system in New Mexico was constructed by the New Mexico & Southern Pacific Railroad Company, the Rio Grande, Mexican & Pacific Railroad Company, and the Silver City, Deming & Pacific Railroad Company, all chartered under the laws of this territory, which were, after construction, leased and operated by the said Santa Fe Company, and that all of said railroad companies are land-grant railroads, and have accepted and complied with the terms and provisions of the act of

congress approved March 3, 1875, and, as such, are
entitled to a right of way, over and through the public
domain, of one hundred feet on each side from the
center of the track, and that all of said right of way
has been occupied and used by each, for railroad and
station purposes, and was taken substantially from the
public lands of the United States; and that said Postal
Company proposes to construct its line of telegraph
upon and along the right of way in New Mexico, of all
three of said railroads; that the said Santa Fe Com-
pany and the other railroads named are, by virtue of
the laws of the United States, military and post roads,
and that it, the Postal Company, is, by virtue of the
laws of the United States, entitled to, and has the
right to, construct its telegraph line over and along
all military and post roads of the United States; that
it applied to the receivers of the Santa Fe Company
for the right to so construct, maintain, and operate
its main and branch lines of telegraph, upon the
right of way of the Santa Fe Company's system, and
for the usual aid in distributing its poles, materials,
supplies, and water for its men, while so constructing
its lines, and offered to pay the usual and customary
prices to said receivers for the transportation of the
same, and to pay to said receivers a just compensation
for any damages or injuries sustained for its use and
occupation of the right of way, but that said receivers
declined and refused to allow it to construct its tele-
graph line upon the right of way, and refused and de-
clined to furnish the necessary aid and facilities for the
same, alleging as a reason that a contract had previ-
ously been entered into between the Santa Fe Com-
pany and the Western Union Telegraph Company
(which is hereafter called the "Western Union Com-
pany"), one clause of which they consider conflicted
with the request of the Postal Company, and which
the receivers felt bound to respect, until the court

should hold to the contrary; otherwise the receivers would be willing to grant the request of the Postal Company, on the payment of a proper compensation; that facilities are granted by the Santa Fe Company to the Western Union Company which are denied to the Postal Company, and that such denial by said receivers is grounded on the clause in said contract now existing between said Santa Fe Company and said Western Union Company, and that said clause in said contract is contrary to law and public policy, and therefore void; with a prayer for the relief sought. The receivers answered, and, among other things, show that they declined and refused to comply with the request of the Postal Company, on the ground that the Western Union Company insists on the validity and binding force of clause 12 in the contract between the Santa Fe Company and the Western Union Company, but, were it not for that clause, the receivers would grant the request of the Postal Company; that the construction of the main and branch lines of telegraph, by the Postal Company proposed, would increase the revenues, and add to the conveniences and facilities, of the property of the Santa Fe Company, in their hands as such receivers; that the receivers are advised and believe that the said twelfth clause in said contract, in so far as it relates to the right of way of the Santa Fe Company, and granting the same to the Postal Company, is void and of no binding force, but, owing to the demand made on them by the Western Union Company, they feel bound to respect it until the court shall have held it void, and submit to the court the question as to the validity of the said twelfth clause, and as to whether or not the Western Union Company was a necessary party to this proceeding. The contract referred to was entered into between the Santa Fe Company and the Western Union Company on the twenty-first day of November, 1888, and the twelfth

clause referred to in that contract reads as follows, to
wit: "Twelfth. The railroad company, so far as it
legally may, hereby grants and agrees to assure to the
Western Union Telegraph Company the exclusive right
of way on, along, and under the line, lands, and
bridges of the railroad company, and all extensions
and branches thereof, and of railroads owned, leased,
operated, or controlled by it, or by corporations owned,
leased, operated, or controlled by it, for the construction,
maintenance, operation, and use of lines and poles and
wires, and underground or other lines, for commercial
or public uses or business, with the right to put up or
construct, or cause to be put up or constructed, from
time to time, in accordance with the provisions of this
agreement, such additional wires and such additional
lines of poles and wires, and underground or other
lines, as the telegraph company may deem expedient;
and the railroad company will not, except as legally
required, transport men or materials for the construc-
tion, maintenance, or operation of a line of poles and
wire, or wires, underground or otherwise, in competi-
tion with the lines of the telegraph company, party
hereto, except at and for the railroad company's regu-
lar local rates, nor will it furnish, except as legally
required, for any competing line, any facilities or
assistance that it may lawfully withhold, nor, except as
legally required, stop its trains, nor distribute material
therefor, at other than regular stations, providing,
always, that, in protecting and defending the exclusive
grants conveyed by this contract, the telegraph com-
pany may use and proceed in the name of the railroad
company, or of any other company owned, leased,
operated, or controlled by it, but shall indemnify and
save harmless the railroad company and its subordi-
nate companies from any and all damages, costs,
charges, and legal expenses incurred therein or there-
by." The Western Union Company appeared, and

filed a demurrer to the intervening petition of the Postal Company, upon seven special grounds, and, after the hearing on the same, the court sustained the demurrer, and dismissed the intervening petition, from which decision the cause is here on appeal.

It is contended in this cause, in the brief of the appellee, that the Santa Fe Company filed the demurrer, but it is shown by the record that it was interposed for and on behalf of the Western Union Company, in the name of the Santa Fe Company, under and by virtue of the provisions in clause 12 of the contract, which provided, "Always, that in protecting and defending the exclusive grants conveyed by this contract, the telegraph company may use and proceed in the name of the railroad company," etc. The railroad company, by its receivers, through their solicitors, appeared, and answered the intervening petition, and set up, as their defense, that they felt bound to decline the demands made in the said intervening petition, by reason of the covenants contained in the twelfth clause of the contract, until released from the same by the decision of the court holding the covenants therein contrary to public policy and void; and submitted to the court, in their answer, the further question "as to whether or not, under all the facts stated and set forth in this answer, and under the facts stated and set forth in the application, the Western Union Telegraph Company is a necessary party to this proceeding." The demurrer interposed is as follows, to wit: "(1) That said court is without jurisdiction to entertain or grant the prayer of intervener's petition in the summary manner proposed. (2) For that there is a defect of parties, it appearing from said intervener's petition and the answer of the defendant receivers, that the Western Union Telegraph Company has, or claims to have, rights which would be affected by the order sought; furthermore than it appears,

from said intervener's petition and the answer of defendant receivers, that the right of way of the said several railroad companies is, at least in part, over and through private grants, and that an additional burden or servitude placed upon said right of way would entitle the owners of abutting property to a hearing for compensation, and that all of said abutting owners, to be so affected, are necessary parties to the determination of this matter. (3) For that it is beyond the scope of the duties or powers of said receivers to grant, bargain, or sell any portion of the right of way, or to fasten upon the same any additional burden or servitude, all of which appears from the records of this court. (4) For that it is beyond the powers or jurisdiction of this court, by an interlocutory order or other interlocutory or collateral proceeding, to authorize the receivers to sell, bargain, or convey any portion of the right of way of said railroad company, or to incumber the same by any additional burden or servitude, for years or in perpetuity. (5) For that it appears, from the petition of said intervener and the answer of the receivers, that the Western Union Telegraph Company has paid a consideration to said railroad company for the faithful observance of all the terms of said contract between it, the said Western Union Telegraph Company, and said Atchison, Topeka & Santa Fe Railroad Company, including the covenant and provision complained of, and that there is in said petition or said answer no offer to pay or refund to said Western Union Telegraph Company said consideration, or any part thereof. (6) For there is no allegation in said petition of intervener that the said Postal Telegraph Cable Company has complied with any of the provisions of the laws of the territory of New Mexico relative to filing in the office of the secretary of the territory a copy of its charter, and the appointment of an agent, or otherwise authorizing it to do business of any kind

within said territory, or to have any standing in the courts in said territory. (7) For that the petition of said intervener does not state facts sufficient to constitute a cause of action." It is insisted by the appellee that the Postal Company can intervene only under sections 1890–1892, Compiled Laws 1884, and that the facts stated do not show that the Postal Company has sufficient interest in the cause pending to permit it to intervene. This contention can not be maintained, because this is an equitable proceeding, and the sections of the statute referred to relate only to actions at law. In the case at bar, the property involved is in custodia legis, and there is no more proper remedy or procedure than to allow the Postal Company to come in by intervention and litigate its rights, if it have any, and in such causes it is in the necessary and inherent power of a court of chancery to permit parties claiming an interest in the subject-matter in litigation to establish their rights, if they can, and to have them finally adjudicated and determined in the action then pending, and it is the nature of an examination pro interesse suo. Krippendorf v. Hyde, 4 Sup. Ct. 27; 2 Daniell, Ch. Prac. 1057; Vault Co. v. McNulta, 14 Sup. Ct. 915; Joy v. City of St. Louis, 11 Sup. Ct. 243. Many other cases might be cited where this practice has been followed. In Mercantile Trust Co. v. Atlantic & P. R. Co., 63 Fed. Rep. 513, United States District Judge Ross, in passing on this question concerning the California statute with respect to interventions, said: "The suit was therefore one in equity; and the California statute respecting intervention, relied on in support of the demurrer, does not, I think, have any application to the present proceeding. The property in question being in the hands of the officer of the court, there is no more appropriate way in which to present the alleged rights of the Postal Telegraph Company than by an intervening petition."

*Margin note: INTERVENTION: secs. 1890–1892, Comp. Laws: equity.*

The sixth ground relied on in the demurrer is that the Postal Company, being a foreign corporation, has no standing in court, because it has not complied with the laws of the territory, in that it has not filed a copy of its charter in the office of the secretary of the territory, and has not designated an agent upon whom process may be served. This objection is not well taken, because it can not be raised in a collateral proceeding of this nature. A stranger or third person can not be heard to object to a foreign corporation doing business within the limits of this territory, on the ground that it has not complied with the statute which requires all corporations chartered under the laws of any other state or territory to file an authenticated copy of its charter, and of the laws of the state or territory granting the same, and a certificate designating upon whom process may be served, before it can do business in the territory. This objection must come first from the territory, in a direct proceeding in quo warranto brought for that purpose. It can not be raised in an action between individuals. High, Extr. Rem., sec. 724; Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93; Cowell v. Springs Co., 100 U. S. 55; Jones v. Habersham, 107 U. S. 174, 2 Sup. Ct. 336, and cases there cited; Pensacola Tel. Co. v. W. U. Tel. Co., 96 U. S. 1.

*RIGHT of action of foreign corporation: collateral attack.*

The remaining point for consideration is as to the validity and legal force of the covenants in the twelfth clause in the contract entered into between the Santa Fe Company and the Western Union Company on the twenty-first day of November, 1888; and it is to continue in force for twenty-five years from that time. This superseded a similar contract entered into between the same corporations in January, 1872, and stripped of its legal verbiage, it means that the Santa Fe Company has conveyed

*TELEGRAPH company: right of way along line of railroad: exclusive privilege: contract against public policy.*

to the Western Union Company an exclusive grant and franchise, over, along, and through its right of way, for telegraphic purposes, and agrees not to aid or assist any other person, company or corporation in the construction, operation, and maintenance of any other telegraphic line along, over, or through its right of way, in so far as it may legally decline to do, and is an effort on the part of these corporations to create and maintain a monopoly of transcontinental telegraphic business in the Western Union Company, and in so far as this clause has this effect, it is contrary to public policy, and an attempt to cripple trade, in restraint of commerce, and is void. The Postal Company proposes to construct its line over the right of way of the New Mexico & Southern Pacific Railroad, from the north boundary line of New Mexico, at or near Raton, to the city of Albuquerque, which is a part of the Santa Fe Company's system; and it is shown in the answer of the receivers that this right of way was secured over the public domain, in large part, under and by virtue of the act of congress, approved March 3, 1875, granting a right of way to railroad companies over the public domain, of the width of one hundred feet on each side from the center of the tract. This line of road is a military and post road, having complied with all the requirements of law to make it such, and, by virtue of the laws of the United States, the Postal Company has the right and the authority to construct its line, poles, wires, etc., over, along, and upon the right of way, as proposed by it, so long as it in no way hinders or interferes with the necessary and proper management and operation of the railroad, and pays the railroad company a proper and customary compensation for any and all services performed by it, and pays to it due and proper compensation for any damages it may sustain by reason of the construction and maintenance of the telegraph line by the Postal

Company. "Any telegraph company now organized or which may hereafter be organized, under the laws of any state, shall have the right to construct, maintain and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by law, and over, under, and across the navigable streams or water of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and water, or interfere with the ordinary travel on such military or post roads." Rev. Stat. U. S., sec. 5263. This section has been the source of much discussion·by many of the courts of the country, and in each case it has been held that the section quoted is in its nature prohibitive, as to the force and effect of any contract entered into by a railroad company, granting an exclusive privilege and franchise over and along its right of way over and through the public domain to any single telegraph company, where such railroad has acquired its right of way under and by virtue of an act of congress, or which are or may be declared military or post roads by act of congress. In W. U. Tel. Co. v. Burlington & S. W. R'y Co., 11 Fed. Rep. 1, in passing on a clause in a contract entered into between the railroad company and the telegraph company, which is similar in its nature and effect to the clause in the contract under consideration, Judge McCrary said: "In our opinion, it is not competent for a railroad company to grant to a single telegraph company the exclusive right of establishing lines of telegraphic communication along its right of way. The purpose of such contracts is very plainly to cripple and prevent competition, and they are therefore void, as being in restraint of trade, and contrary to public policy. They are also in contravention of the act of con-

gress of July 24, 1866, which authorizes telegraph companies to maintain and operate lines of telegraph over and along any of the military and post roads of the United States which have been or may hereafter be declared such by act of congress. We therefore must hold the second subdivision of the contract void." In the case of Pensacola Tel. Co. v. W. U. Tel. Co., 96 U. S. 1, wherein the state legislature of Florida granted to the Pensacola Telegraph Company an exclusive franchise and privilege, for telegraphic purposes, over a certain portion of the territory of that state, in passing upon the injunction asked to restrain the Western Union from constructing its lines over that territory, Chief Justice WAITE, speaking for the court, said: "The state of Florida has attempted to confer upon a single corporation the exclusive right of transmitting intelligence by telegraph over a certain portion of its territory.   *   *   *   The state, therefore, clearly, has attempted to regulate commercial intercourse between its citizens and those of other states, and to control the transmission of all telegraphic correspondence within its own jurisdiction. The statute of July 24, 1866 (14 Stat. 221), in effect, amounts to a prohibition of all state monopolies in this particular. It substantially declares, in the interest of commerce, and the convenient transmission of intelligence from place to place by the government of the United States and its citizens, that the erection of telegraph lines shall, so far as state interference is concerned, be free to all who will submit to the conditions imposed by congress, and that corporations organized under the laws of one state for constructing and operating telegraph lines shall not be excluded by another from prosecuting their business within its jurisdiction, if they accept the terms proposed by the national government for this national privilege." This is just what the Western Union Company is now attempting to do. Its aim and effort is to

monopolize all the transcontinental telegraphic business through New Mexico, Arizona, and Southern California, by prohibiting the Postal Company from constructing a competing line for the transmission of telegraphic correspondence across this part of the continent. If a sovereign state, through its chosen representatives, has not the power to grant special privileges of this kind, then a corporation certainly can not. The general government has power to regulate, over every foot of its territory. It is not limited by state lines, and knows no boundaries, except national. The electric telegraph line is, at this day and time, as much a common carrier and national highway, in the transmission of telegraphic business and intelligence, as the railroads and the steam vessels; and the United States government will not permit its citizens to be compelled to do business with any one single individual or corporation, when other individuals and corporations offer to invest capital and engage as competitor for a share of the public and private business. The government has reserved to itself and to its citizens the right and privilege to share in the convenience and advantages produced by competitors for their patronage and support. In Mercantile Trust Co. v. Atlantic & P. R. Co., 63 Fed. Rep. 513, a case exactly similar to the case at bar, United States District Judge Ross, in passing upon the same clause, in the same contract entered into between the Atlantic & Pacific Railroad Company, in a very lucid opinion reviewed the several congressional acts and decisions of courts on that subject, and held the clause here in question contrary to public policy, in restraint of trade and commerce, and void.

But, it is insisted by appellee the Western Union Company that the act of congress in question does not apply, because it is shown by the record that a portion of the right of way of the New Mexico & Southern Pacific Railroad is over and through, in part, private

property, obtained by the railroad company by purchase, or by condemnation proceedings under the statute. In passing on this point, raised in the case of Pensacola Tel. Co. v. W. U. Tel. Co., supra, the supreme court of the United States say: "It is insisted, however, that the statute extends only to said military and post roads as upon the public domain; but this, we think, is not so. The language is, 'through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States, which have been or may be declared such by act of congress, and over or across the navigable streams or water of the United States.' There is nothing to indicate an intention of limiting the effect of the words employed, and they were therefore to be given their natural and ordinary significance." The Santa Fe Company never obligated itself to do more than it has done. It simply sold and conveyed to the Western Union Company a one half interest in its telegraph lines and telegraph business, for the consideration therein stated, and obligated itself to protect the Western Union Company in its exclusive privileges only in so far as it might legally do, and it has fulfilled its covenants by carrying them out on its part, and submitting the question as to the legality and binding force of these covenants to the courts for their interpretation and construction. Entertaining these views the court below erred in sustaining the demurrer interposed by the appellee in behalf of the Western Union Telegraph Company. The decision of the court below is therefore reversed, and the cause remanded, with directions to the district court to overrule the demurrer, and proceed in accordance with this opinion.

SMITH, C. J., and HAMILTON, BANTZ, and COLLIER, JJ., concur.