COMPAÑÍA AZUCARERA DE CAROLINA, APPELLANT, *v.* THE REGISTRAR OF PROPERTY, RESPONDENT.

APPEAL from a decision of the Registrar of Property of San Juan, Section 1.

No. 123.—Decided February 27, 1913.

The Registrar of Property of San Juan, Section 1, refused to record a deed in favor of an agricultural company for the reason that it appeared from the registry that said corporation had recorded already in its favor more than 500 acres of land and that every acquisition of land in excess of that amount was in violation of the Joint Resolution of Congress of May 1, 1900, amending the Foraker Act, and it not appearing that the new acquisition was necessary for the purposes for which the corporation was created, *Held:*

CORPORATIONS—LIMITATION OF RIGHT TO HOLD LANDS—ALIENS—ESCHEAT—IN-
QUEST OF OFFICE—OFFICE FOUND.—In the United States corporations and for-
eigners are placed by law in the same class in this respect, and although they
are prohibited or limited as to the possession of lands, they have full power
of ownership of the lands until the Government or the State intervenes.   The
proceeding against aliens to secure the escheat of lands is known as ''inquest
of office'' and ''office found.''

ID.—TITLES OF CORPORATIONS.—Such corporations may sue in ejectment or un-
lawful detainer and demand specific performance of contracts, for their titles
are good as against all the world except the State.

ID.—LIMITATION OF RIGHT TO HOLD LANDS.—The Organic Act does not prohibit
the acquisition of lands but limits the ownership and control thereof to 500
acres.

ID.—REGISTRARS OF PROPERTY—RECORD OF TITLE.—A registrar is bound to record
a conveyance to an agricultural corporation although the law forbids the
ownership and control of more than 500 acres.   The law only requires the
registrar to examine the documents submitted to him and the previous history
of the property in question.

ID.—ATTORNEY GENERAL—PROCEEDINGS FOR ESCHEAT—ULTRA VIRES.—The Attor-
ney General is the official authorized by the Organic Act in connection with
the Revised Statutes of the United States to initiate proceedings against cor-
porations which perform acts *ultra vires.*   Section 73 of the Political Code
is to the same effect.

ID.—CONSTRUCTION OF DEEDS—LIMITATION OF RIGHT TO HOLD LANDS—PRESUMP-
TION.—The silence of a deed with respect to certain exceptions to the limita-
tion established by the Organic Act does not preclude the possibility of the
existence of such exceptions.   The same may be said of the supposed violation
of the charter of a corporation.

OWNERSHIP—RECORD OF TITLE.—No one is bound to record his property in order
to acquire the full ownership thereof.

REGISTRY OF PROPERTY—QUESTIONS OF FACT.—The registry is not the place in
which to try matters involving disputed questions of fact.

The facts are stated in the opinion.

*Messrs. Bosch & Soto* for appellant.

The registrar did not appear.

MR. JUSTICE WOLF delivered the opinion of the court.

On April 16, 1912, the Compañía Azucarera de la Caro-
lina presented two deeds to the registrar of property of
this city.   These deeds were conveyances of lands from Ro-
sales & Compañía in favor of the appellant.   The registrar
refused the record in each case in the following note:

''The record of the foregoing document is denied because as it
appears therefrom that the grantee is a corporation organized in
accordance with the laws of Porto Rico it is absolutely necessary

to have at hand the charter thereof to determine the legal capacity of said corporation with respect to its power to acquire land, because if the Carolina Sugar Company is a corporation engaged in agriculture, as it already appears to have recorded in its favor in this office five hundred and 50/100 acres, the acquisition, object of the presentation, is therefore null and void because it is in violation of the provisions set forth in section 3 of the Joint Resolution of Congress of May 1, 1900; and even in the supposition that such corporation is not engaged in agriculture it would be subject to the same prohibition inasmuch as it does not appear that this new acquisition is reasonably necessary to permit the grantee to carry out the purposes for which it was created.''

The law to which the registrar refers is as follows:

''Section 3.—That all franchises, privileges or concessions granted under section 32 of said Act shall provide that the same shall be subject to amendment, alteration or repeal; shall forbid the issue of stock or bonds, except in exchange for actual cash, or property at a fair valuation, equal in amount to the par value of the stock or bonds issued; shall forbid the declaring of stock or bond dividends; and, in the case of public-service corporations, shall provide for the effective regulation of the charges thereof and for the purchase or taking by the public authorities of their property at a fair and reasonable valuation. No corporation shall be authorized to conduct the business of buying and selling real estate or be permitted to hold or own real estate except such as may be reasonably necessary to enable it to carry out the purposes for which it was created, and every corporation hereafter authorized to engage in agriculture shall by its charter be restricted to the ownership and control of not to exceed five hundred acres of land; and this provision shall be held to prevent any member of a corporation engaged in agriculture from being in any wise interested in any other corporation engaged in agriculture. Corporations, however, may loan funds upon real estate security, and purchase real estate when necessary for the collection of loans, but they shall dispose of real estate so obtained within five years after receiving the title. Corporations not organized in Porto Rico, and doing business therein, shall be bound by the provisions of this section so far as they are applicable.''

The question presented by the appellant is whether under

the Foraker Act and the laws in force in Porto Rico the registrar has power to refuse the record of an instrument where it appears from the registry that a particular agricultural corporation has more than 500 acres of land.

Article 18 of the Mortgage Law is as follows:

"Registers shall determine, under their responsibility, the legality of the documents by virtue of which the record is requested, and the capacity of the parties interested by what appears from said documents.

"All the documents issued by judicial authorities shall also be determined by them under their responsibility, and for the sole purpose of admitting, suspending, or refusing their record or entry.

"There shall be no further remedies than those mentioned in this law against the suspension or refusal of a record or cautionary notice, judges or courts by virtue of judicial documents not being permitted to compel the registers in any other manner to record or enter."

Article 6 provides:

"The record of instruments in the registry may be demanded indiscriminately:

"By the person conveying the interest;

"By the person acquiring the same;

"By any person interested in securing the interest which is to be recorded;

"By the person who is legally authorized to represent any of the above."

And by article 18, as we have seen, the legality is to be determined from the documents, taking into account, in accordance with section 17, the other records relating to the same property.

We shall first seek to determine the nature of the interest here sought to be recorded by the appellant corporation.

In *Fritts* v. *Palmer,* 132 U. S., 282, the right of a foreign corporation to acquire real estate in Colorado was involved and the court held that perhaps the reasonable interpretation

of the statute was that a foreign corporation should not purchase or hold real estate in Colorado until it should acquire, in the mode prescribed by the local law, the right to do business in that State. But that deed was not thereby necessarily made absolutely void as to all persons and for every purpose, inasmuch as the constitution and laws of Colorado did not prohibit foreign corporations from purchasing and holding real estate within its limits.

Mr. Justice Harlan reviews the authorities in that case which show that where a corporation is to take title to real estate a conveyance to it is not void but only voidable, and the court goes on to say:

"To the above cases may be added those holding that an alien may take by deed or devise and hold against anyone but the sovereign until office found. *Cross* v. *De Valle*, 1 Wall., 1, 13; *Governeur* v. *Robertson*, 11 Wheat., 332; *National Bank* v. *Matthews*, 98 U. S., 621, 628; *Phillips* v. *Moore*, 100 U. S., 208. Also, those holding that the question whether a corporation, having capacity to purchase and hold real estate for certain defined purposes, or in certain quantities, has taken title to real estate for purposes not authorized by law, or in excess of the quantity permitted by its charter concerns only the State within whose limits the property is situated. It cannot be raised collaterally by private persons unless there be something in the statute expressly or by necessary implication authorizing them to do so. *Cowell* v. *Springs Co.*, 100 U. S., 55, 60; *Jones* v. *Habersham*, 107 U. S., 174, 188."

So that aliens and corporations are treated alike with respect to capacity in taking and holding lands. This decision is reviewed and affirmed in the case of *Blair* v. *Chicago*, 201 U. S., 450, 451.

In the case of the *National Bank* v. *Matthews*, 98 U. S., 628, it was held that where a corporation is incompetent by its charter to take a title to real estate a conveyance to it is not void but only voidable and the sovereign alone can object. Comparison is there made to aliens who may hold until office

found. This case was reviewed and affirmed in *Kerfoot* v. *Farmers' and Merchants' Bank,* 218 U. S., 287.

Similarly, it was held in *Cowell* v. *Springs Co.,* 100 U. S., 60, that where a particular conveyance was necessary for a corporation to enable it to carry on its business it was a matter between the State and the corporation and was no concern of a private person. And in *Phillips* v. *Moore,* 100 U. S., 208, it was held that by the common law an alien could not acquire real property by operation of law but might take it by act of the grantor and hold it until office found; that is, until the fact of alienage is authoritatively established by a public officer upon an inquest held at the instance of the government. It has been shown in that opinion that the proceeding which contained the finding of the fact upon the inquest of the officer was technically designated in the books of law as "office found." It removed the fact upon the existence of which the law devested the estate and transferred it to the government from the region of uncertainty and made it a matter of record. It was devised, according to the old law writers, as an authentic means to give the king his right by solemn matter of record, without which he in general could neither take nor part with any thing; for it was deemed "a part of the liberties of England, and greatly for the safety of the subject, that the king may not enter upon or seize any man's possessions upon bare surmises, without the intervention of a jury." A like decision was handed down in the case of *Jones* v. *Habersham,* 107 U. S., 188.

In *Louisville School Board et al.* v. *King,* 15 L. R. A. [N. E.], 379, it was held that a third person buying from a corporation holding escheatable land was protected until some appropriate step was taken by the State. In Kentucky, where the case arose, banking companies were prohibited from holding lands for more than five years except for their legitimate purposes under penalty of escheat, and the court found that neither by the constitution nor the statute was it

declared that the corporation should be devested of, nor the State vested with, the title, and the question of whether the property was useful or useless in the corporate business was one outside of the record. The authorities are reviewed on page 385 as well as in a note to the same case beginning on page 379. Specific performance was decreed in this case.

Other cases treating of the general question are *Wunderle* v. *Wunderle,* 19 L. R. A., 84, and *Lancaster* v. *Amsterdam Improvement Co.,* 24 L. R. A., 322.

Under this rule a corporation has variously been held to have all the powers that an individual may possess. For example, in *American Mortgage Co.* v. *Tennille,* 12 L. R. A., 529, it was held that where a corporation forbidden by law to hold more than 5,000 acres bought a promissory note secured by a deed of the land and took a conveyance from the holder for said land, although the corporation then owned more than 5,000 acres, it was decided that the conveyance was good. Other cases on the general principle are cited in the notes to that case.

It has frequently been held that it is no defense to an action of ejectment by a corporation that a larger amount of land had been conveyed to it than it was authorized to take. *Bank* v. *Railroad Co.,* 17 Wis., 372; *Glass Co.* v. *Dewey,* 16 Mass., 94, 102; *Mining Co.,* v. *Baker,* 3 Nev., 391; *Mining Co.* v. *Clarkin,* 14 Cal., 552. In the last-mentioned case Mr. Justice Field, speaking for the court, says:

"Whether or not the premises in controversy are necessary for these purposes (of the corporation), it is not material to inquire; that is a matter between the government and the corporation and is no concern of the defendants. It would lead to infinite inconveniences and embarrassments if, in suits by corporations to recover the possession of property, inquiries were permitted as to the necessity of such property for the purposes of their corporation and the title made to rest upon the existence of such necessity."

The court says in *Mining Co.* v. *Baker,* 3 Nevada, 391, after discussing the question:

"A deed, then, to a mining corporation is not void upon its face. If they have violated the law in taking a greater quantity of land than is allowable, then they have committed a wrong, not against any particular individual, but against the whole community, and this wrong can only be inquired into by a proceeding on the part of the State. Their deed to the land, if they buy from one having title, or their possession, if they only derive title from occupation, *gives them a right to hold against all the world except the State.*"

Numerous other cases are cited and reviewed in the case of *Southern Pacific R. R. Co.* v. *Orton,* 32 Fed., 457. In that case and in Thompson on Corporations, paragraph 5796, it is shown that the rule enables a corporation which has received a grant of land to maintain an action against a trespasser to recover possession of it; and the trespasser will not be heard to question the title of the corporation on the ground that it has no authority to take the lands.

Cases showing other powers can be found in 10 Cyc., 1138, and in the citations of *Fritts* v. *Palmer, supra,* in Roses Notes to the United States Reports, volume 11, page 836.

Thus it may be seen that a corporation limited by the law or by its charter has until the State acts every power and capacity that any other individual capable of acquiring lands possesses. The corporation may exercise every act of ownership over such lands; it may sue in ejectment or unlawful detainer and it may demand specific performance. It has an absolute title against all the world except the State after a proper proceeding is begun in a court of law. The provisions of law in Porto Rico are no different. The Foraker Act does not prohibit the acquisition of land, but says that a corporation engaged in agriculture shall by its charter be restricted to ownership and control of not to exceed 500 acres of land.

Under the Mortgage Law the registrar is only given power

to examine the legality of the document submitted to him, and by article 6 of that law, cited above, he is required to record any interest that a corporation may have; hence he is bound to record the conveyance to the corporation no matter whether its charter forbids the holding or not. The law does not forbid the acquisition of more than 500 acres nor is there any provision forbidding corporations to acquire lands. The registrar is only required to examine the documents that are submitted to him and the previous history of the land in question. There is no provision in the law which makes it incumbent upon him to search through his records to find whether a particular corporation has already recorded more than 500 acres of land.

The Organic Act in section 21 provides that the Attorney General will have all the power and discharge all the duties provided by law for an attorney of the Territories of the United States, in so far as the same are not locally inapplicable.

And by section 771 of the Revised Statutes of the United States, among other duties it is made the duty of every district attorney to prosecute all civil actions in which the United States are concerned, and by other sections attorneys for the Territories are given the same powers as the United States district attorneys, so that its provisions would seem to determine who is the officer who shall look after the interest of Porto Rico and who shall bring actions to recover any fine of forfeiture.

Moreover, by section 73 of the Political Code, as it has been amended by the laws of 1906, it is provided that the Attorney General, upon the request of the Commissioner of the Interior, shall institute suits for the discovery of all immovable and movable property to which The People of Porto Rico may be entitled under the laws of escheat, or in and to which it has any other claim.

So that ample provision is made in the law by which any violation of the Organic Act may be thoroughly investigated

and prosecuted by the Attorney General. If there is any doubt how far the powers of the registrar extend, it is made clear by the provisions of the Organic Act and by section 73 of the Political Code. The Attorney General is the exclusive officer in whom is confided the right to initiate proceedings for escheat or attack the right of a corporation to hold land. Without some such judicial or quasi-judicial proceedings a corporation might be deprived of some of its property rights without due process of law.

The fact that a particular deed is silent does not give the registrar the right to conclude that the corporation may not have conveyed a part of the land already recorded. No man is bound to record his property in the registry of titles, and a grantee of a corporation might delay indefinitely in recording such transfer or conveyance. There might be a misdescription in the registry and the corporation might, in point of fact, hold less than 500 acres. Furthermore, the statute permits the corporation to take conveyances of property in payment of debts. The fact that the deed is silent on such a matter is not a presumption that the property was not so taken. All such matters should be inquired into in a plenary proceeding before a court, as provided by law, where both the government and the corporation might have a chance to be heard. Other inconveniences of having the registrar act are also apparent. If, for example, a corporation had 300 acres of land in the district of Humacao and 300 acres of land in the district of Caguas, both records could be made as neither of the registrars would have access to the records of the other. So that one corporation that happens to have all its lands in one district may be refused registration of a part, while an agricultural corporation that has its lands scattered would secure their complete registration.

At times a registrar has thought that he had a right to question a finding or order of the court, but it has always been decided that his powers in that regard are strictly limited. The Supreme Court of Spain, by its judgment of October 15,

1871, held. that the registrars were limited in their powers by articles 18 and 65 of the Mortgage Law, beyond which they cannot go without committing a dangerous intrusion into that which belongs to a court of justice. We have steadily held that a registrar had no right to question the facts or proof investigated by a court or inquire into the justice of the decision. *Ramírez* v. *The Registrar,* 16 P. R. R., 330; *Fernández* v. *The Registrar,* 17 P. R. R., 1021; *Ramos* v. *The Registrar,* 18 P. R. R., 16; *Rivera* v. *The Registrar,* 14 P. R. R., 249. These decisions make it more evident that the registry is not the place to try matters that involve disputed questions of fact.

For these reasons the note of the registrar must be reversed.

*Reversed.*

Chief Justice Hernández and Justices MacLeary, del Toro and Aldrey concurred.